IRELL & MANELLA LLP
John C. Hueston (164921; jhueston@irell.com)
Michael Fehner (207312; mfehner@irell.com)
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660-6324
Telephone:   (949) 760-0991
Facsimile:   (949) 760-5200

STATE COMPENSATION INSURANCE FUND
Linda S. Platisha (195281; lsplatisha@scif.com)
1750 E. Fourth Street, Suite 450
Santa Ana, CA 92705
Telephone: (714) 347-6130
Facsimile: (714) 347-6145

Attorneys for *Plaintiff* STATE COMPENSATION
INSURANCE FUND, a Public Enterprise Fund
and Independent Agency of the State of California

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| STATE COMPENSATION INSURANCE FUND,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL D. DROBOT, SR., *et al.*,<br><br>Defendants. | Case No. 13-00956 AG (CWx)<br><br>**[OPPOSITION, MOTION 1 OF 2]**<br><br>**PLAINTIFF STATE FUND'S OPPOSITION TO MOTION TO DISMISS OF PHARMACY DEFENDANTS**<br>**[DOC. NO. 40]**<br><br>[Opposition 2, Objection to RJN concurrently submitted]<br><br>Date:  November 18, 2013<br>Time: 10:00 a.m.<br>Ctrm.: 10D<br>Judge: Hon. Andrew J. Guilford |

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES............................................1

I.     INTRODUCTION/SUMMARY OF ARGUMENT ......................................1

II.    BACKGROUND ................................................................................3

III.   STANDARD OF REVIEW..................................................................4

IV.   PRELIMINARY MATTERS ...............................................................6

V.    ARGUMENT ......................................................................................6

     A.     This Court Has Jurisdiction Over State Fund's Claims.....................6

         1.     Federal Question Jurisdiction Is Unaffected By State Law .....................................................................6

         2.     WCA's Exclusivity Provisions Do Not Apply To State Fund's Claims................................................7

         3.     *Vacanti* Plainly Holds That The Exclusivity Doctrine Does Not Apply To RICO Claims By An Insurer ..................................................................8

            (a)     The Workers' Compensation Bargain.............................8

            (b)     The Injury Suffered And Vacanti's First Prong................................................................9

            (c)     Vacanti Allows RICO Claims To Proceed....................11

            (d)     Serving The WCA's Intent And Policy .........................12

         4.     State Fund Has Suffered Harm And Therefore Its Case Is Ripe............................................................15

     B.     Fraudulently Induced Settlements Do Not Bar This Action..............16

     C.     Defendants' Statute Of Limitations Arguments Are Meritless......................................................................................18

         1.     State Fund Did Not Have Notice As A Matter Of Law ...........................................................................18

         2.     The Injury Discovery And Separate Accrual Rules Confirm The Timeliness Of State Fund's Claims ...................20

         3.     Fraudulent Concealment Also Tolls The Statute Of Limitations ...................................................................22

VI.   CONCLUSION ................................................................................23

- i -

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

### <u>Cases</u>

4

*Adams v. Liberty Mut. Ins. Co.*,
  60 Mass. App. Ct. 55, 799 N.E. 2d 130, 138 n.17 (2003)..............................9

5

*Aryeh v. Canon Business Solutions, Inc.*,
  55 Cal. 4th 1185 (2013)...............................................................................21, 23

6

7

*Bath Unlimited, Inc. v. Ginarte, O'Dwyer, Winograd, and Laracuente*,
  2005 WL 2406097 (D.N.J. Sept. 29, 2005) ..................................................15

8

*Canaan Taiwanese Christian Church v. All World Mission Ministries*,
  211 Cal. App. 4th 1115 (2012)........................................................................16

9

10

*Charles J. Vacanti, M.D., Inc. v. State Compensation Insurance Fund*,
  24 Cal. 4th 800 (2001)...........................................................................passim

11

*Collins v. Union Pacific R.R. Co.*,
  207 Cal. App. 4th 867 (2012) ...........................................................................7

12

13

*Dias v. Nationwide Life Ins. Co.*,
  700 F. Supp. 2d 1204 (E.D. Cal. 2010)...........................................................20

14

*eBay Inc. v. Digital Point Solutions, Inc.*,
  2009 WL 2523733 (N.D. Cal. Aug. 17, 2009)................................................22

15

16

*Edward Carey Const. Co. v. State Compensation Insurance Fund*,
  194 Cal. App. 4th 657 (2011)..........................................................................14

17

*Felder v. Casey*,
  487 U.S. 131 (1988) ..........................................................................................7

18

19

*Fermino v. Fedco, Inc.*,
  7 Cal. 4th 701 (1994).........................................................................................8

20

*Haliban v. WCAB*,
  68 Cal. Comp. Cases 1867, 2003 Cal. Wrk. Comp. LEXIS 590
  (Dec. 4, 2003) ...........................................................................................1, 13

21

22

*Hand Rehabilitation Center v. WCAB*,
  34 Cal. App. 4th 1204 (1995)..........................................................................14

23

24

*Hazelwerdt v. Industrial Indemnity Exchange*,
  157 Cal. App. 2d 759 (1958)....................................................................11, 12

25

*Hughes v. Argonaut Ins. Co.*,
  88 Cal. App. 4th 517 (2001) ..............................................................................8

26

27

*In re GlenFed, Inc. Sec. Litig.*,
  42 F.3d 1541 (9th Cir. 1994)..............................................................................5

28

- ii -

**Page(s)**

*Jardine v. Maryland Cas. Co.*,
    2011 WL 1585065 (N.D. Cal. Apr. 27, 2011) ............................................... 18

*La Jolla Beach & Tennis Club v. Industrial Indem. Co.*,
    9 Cal. 4th 27 (1994).................................................................................. 10, 13

*Lance Camper Mfg. Corp. v. Republic Indemnity Co. of America*,
    90 Cal. App. 4th 1151 (2001)............................................................................ 9

*Little v. Pullman*,
    219 Cal. App. 4th 558 (2013)........................................................................ 17

*Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*,
    431 F.3d 353 (9th Cir. 2005)............................................................. 18, 20, 21

*Marsh & McLennan, Inc. v. Superior Court*,
    49 Cal. 3d 1 (1989)........................................................................................ 14

*McClain v. Octagon Plaza, LLC*,
    159 Cal. App. 4th 784 (2008)........................................................................ 17

*McNeese v. McNeese*,
    190 Cal. 402 (1923)...................................................................................... 17

*Mitchell v. Scott Wetzel Servs., Inc.*,
    227 Cal. App. 3d 1474 (1991)....................................................................... 14

*Molus v. Swan*,
    2007 WL 2326132 (S.D. Cal. Aug. 13, 2007) .............................................. 21

*Moyo v. Gomez*,
    32 F.3d 1382 (9th Cir. 1994)........................................................................... 4

*N.L.R.B. v. O'Neil*,
    965 F.2d 1522 (9th Cir. 1992)....................................................................... 22

*O'Connor v. Boeing North Am., Inc.*,
    311 F.3d 1139 (9th Cir. 2002)....................................................................... 21

*Odom v. Microsoft Corp.*,
    486 F.3d 541 (9th Cir. 2007)........................................................................... 5

*People ex. rel. Monterey Mushrooms, Inc. v. Thompson*,
    136 Cal. App. 4th 24 (2006)......................................................................... 13

*Ron Greenspan Volkswagen, Inc. v. Ford Motor Land. Dev. Corp.*,
    32 Cal. App. 4th 985 (1995)......................................................................... 17

*S.G. Borello & Sons, Inc. v. Dep't of Industrial Relations*,
    48 Cal. 3d 341 (1989).................................................................................... 8

**Page(s)**

*Shoemaker v. Myers,*
    52 Cal. 3d 1 (1990) ............................................................................. 9

*Starr v. Baca,*
    652 F.3d 1202 (9th Cir. 2011) ........................................................... 4

*State Compensation Insurance Fund v. Khan*
    (C.D. Cal. July 30, 2013) .......................................................... passim

*State Farm Mut. Auto Ins. Co. v. Ammann,*
    828 F.2d 4 (9th Cir. 1987) ............................................................... 21

*Supermail Cargo, Inc. v. United States,*
    68 F.3d 1204 (9th Cir. 1995) ........................................................... 18

*Tribune Co. v. Purcigliotti,*
    869 F. Supp. 1076 (S.D.N.Y. 1994) ................................................ 7

*U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.,*
    720 F.3d 1174 (9th Cir. 2013) ......................................................... 18

*United States Fidelity & Guar. Co. v. Lee Investments LLC,*
    641 F.3d 1126 (9th Cir 2011) .............................................. 7, 13, 16

**Statutes**

18 U.S.C. § 1961(5) .............................................................................. 22

28 U.S.C. § 1331 .................................................................................... 6

Cal. Civ. Code § 1668 .......................................................................... 17

Cal. Civ. Code § 1689(b)(1) ................................................................ 16

Cal. Civ. Code § 1691 .......................................................................... 17

Cal. Code Regs. § 9789.22 .................................................................... 4

Cal. Code Regs. § 9792.5 ...................................................................... 4

Cal. Ins. Code § 11770 .......................................................................... 3

Cal. Ins. Code § 11783(a) ...................................................................... 3

Cal. Ins. Code § 1871 .......................................................................... 13

Cal. Lab. Code § 3600(a) ....................................................................... 8

Cal. Lab. Code § 3602(a) ....................................................................... 8

Cal. Lab. Code § 3820(a) ..................................................................... 13

**Page(s)**

Cal. Lab. Code § 3850(b) ...........................................................................8

Federal Rule of Civil Procedure 12(b)(1)...........................................5, 6

Federal Rule of Civil Procedure 15(a)(2) ...............................................23

Federal Rule of Civil Procedure 9(b) .......................................................5

**Other Authorities**

1 Witkin, *Summary of Cal. Law* Contracts
    § 304 (10th ed. 2005) .......................................................................17

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION/SUMMARY OF ARGUMENT

Defendants' primary argument for dismissal is that they can fraudulently bill whatever they like to State Fund, constrained by absolutely no federal statute, state law, regulation, or the truth, and that they are immune from answering for that conduct in this Court.  They assert that State Fund's only remedy is before the Workers' Compensation Appeals Board ("WCAB"), and even there only to dispute the amount of Defendants' bills.

They are wrong.  The California Workers' Compensation Act ("WCA") protects employers and insurers, not providers, from being drawn into disputes that should be covered by the basic employer-employee bargain.  That bargain eschews arguments about who caused an employee's injury in favor of a no-fault system designed to provide speedy relief to the employee, and it is not at issue in a dispute about fraudulent medical bills after treatment has been provided.  The WCA does not limit this Court's jurisdiction to hear this dispute; it allows insurers to sue fraudulent providers.  WCAB administrative remedies are expressly *non*-exclusive for insurers alleging fraud.  Moreover, no state act prevents a federal court from exercising federal question jurisdiction over a federal claim created by Congress, such as RICO.  Further, the state decisions (like *Vacanti*) cited by Defendants confirm that some claims (including all RICO claims) fall outside of the workers' compensation bargain even when brought by providers.  The WCAB has admitted that it has no jurisdiction to consider claims like State Fund brings here.  *E.g.*, *Haliban v. WCAB*, 68 Cal. Comp. Cases 1867, 1871–72, 2003 Cal. Wrk. Comp. LEXIS 590 (Dec. 4, 2003).  To be sure, liens filed by Defendants are contested at the WCAB, because providers are obligated to file them there.  State Fund has merely asked for a consolidation and stay of those proceedings while this case is litigated, as the fraud on State Fund is fully redressable only in this Court.

- 1 -

In attempting to minimize the First Amended Complaint ("FAC") as a series of (far-reaching and very specific) "billing disputes," Defendants use the repeated nature of their fraud as an excuse, asserting that "[i]t is a commonplace [sic] that medical providers often do not comply with technical standards governing compensation for their services."  Surg. Mot. at 7 n.3.  This should not be commonplace; the issues are not "technical," and instead represent systemic fraud. Defendants envision a no-downside scenario in which they may bill with impunity, facing only a reduction in charges if they are caught.  This is not the law.  Insurance fraud is a crime, and RICO does not carve out claims tangentially related to workers' compensation, as *Vacanti* recognizes.  Providers do not enjoy immunity from suit in this Court when they step out of their role of assisting injured workers.

Defendants assert additional, contradictory arguments that also demonstrate why this case should proceed.  They say that they have done nothing wrong (so that RICO cannot apply), but that if they did defraud, they should have been sued long ago because the conduct was so obvious.  They also argue that even if they had been sued, they would be immune because billing an insurer is a protected litigation activity (under *Noerr-Pennington* and California's litigation privilege).

While calling State Fund's action a "bad faith" attempt to "fool[]" the Court (Pharm. Mot. at 1:2) or an unprecedented attempt to expand RICO (Surg. Mot. at 2:15–17), Defendants ignore that the Central District has already upheld State Fund's right to bring RICO and state-law fraud claims based on medical providers' fraudulent bills.  Order, Case No. 8:12-cv-01072-CJC-RNB, *State Compensation Insurance Fund v. Khan* (C.D. Cal. July 30, 2013) ("*Khan*," Ex. A for convenience). There, State Fund brought a similar RICO and fraud action against providers, and the Court rejected *every argument* presented by Defendants here, holding:

- RICO was properly alleged where, as here, State Fund submitted detailed spreadsheets, showed a pattern of racketeering activity, and defendants could respond to the allegations (*id*. at 8–10 & n.3);

- Workers' compensation exclusivity did not apply to RICO claims, nor to state-law fraud claims based on the same underlying facts (*id.* at 11);

- *Noerr-Pennington* did not apply because the misconduct consisted of sending fraudulent bills, not petitioning for payment on liens, and such WCAB activity could well be "sham litigation" (*id.* at 13–14);

- The litigation privilege does not protect such conduct, nor does it protect settlement agreements procured by extrinsic fraud (*id.* at 12);

- There was no statute of limitations defense, even as to older bills, because the injury discovery rule delayed the statute and the separate accrual rule made each bill a separate fraud (*id.* at 14–15); and

- State Fund could properly move to rescind settlement agreements in federal court, despite release language or WCAB approval (*id.* at 6–8).

The *Khan* Court got it right, and the same result here—denial of the motions—is entirely supported by the law and the allegations in the FAC.

## II.    BACKGROUND

State Fund was created as a non-profit public entity by the California Legislature to fill a gap in the provision of workers' compensation insurance to California employers.  *See* FAC ¶ 9; Cal. Ins. Code § 11770.  The Legislature gave State Fund the power to sue "in all actions arising out of any act or omission in connection with its business or affairs."  Cal. Ins. Code § 11783(a).

State Fund pays medical providers for services provided to covered workers. FAC ¶ 27.  To receive reimbursement for services performed, providers (including Defendants) submit claim forms and bills to State Fund.  FAC ¶ 28.  If a provider is unhappy with State Fund's decision on a bill, a provider may file a lien in an attempt to recover money before the WCAB on any amounts billed but not paid, along with penalties in the appropriate case.  FAC ¶ 30.  Consistent with its founding principles, State Fund does not knowingly pay taxpayer dollars to providers based on fraudulent claims, in excess of reasonable rates, or in excess of guidelines

1   established by the State or Medicaid.  FAC ¶ 29 & n.3; *see also* tit. 8, Cal. Code

2   Regs. § 9789.22, 9792.5.

3        Despite State Fund's efforts, State Fund has been misled by Defendants into

4   paying inflated, fraudulent bills.  *See*, *e.g.*, FAC ¶¶ 52–55, 73, 99–100, 144–45.

5   Among other schemes, Defendants have: (1) formed shell corporations and

6   represented them to be independent, market-driven entities (so as to pass inflated

7   prices from these entities on to State Fund); (2) billed State Fund at improperly high

8   rates by both unbundling procedures that are supposed to be billed at a set rate

9   together, and using improper codes to represent the services provided ("upcoding");

10  (3) billed nurses at improperly inflated rates by fraudulently listing them as assistant

11  surgeons; and (4) double-billed State Fund with other entities (including among

12  Defendants) for procedures and medications.  *See* FAC ¶¶ 3–7, 41 *et seq.*  State

13  Fund relied on Defendants' fraudulent invoices in making payments and has been

14  damaged as a result of these payments.  *E.g.*, FAC ¶¶ 56, 64, 79–80, 99–101, 145.

15       Every Pharmacy and Surgical Defendant (including the d/b/a and parent

16  company of Pacific Hospital, which is owned and run by Mr. Drobot Sr.) has its

17  headquarters at the *same* address in Newport Beach.  FAC ¶¶ 13–22, 32, 42.

18  Defendants share the same offices and personnel.  FAC ¶ 35.  These Defendants,

19  controlled by Messrs. Drobot, engage in coordinated schemes to defraud State Fund.

20  *E.g.*, FAC Section V (Surgical Defendants); Section VI (Pharmacy Defendants).  A

21  legion of examples of all the schemes alleged in the FAC has already been provided.

22  **III.   STANDARD OF REVIEW**

23       On a motion to dismiss for failure to state a claim, the parties agree that "the

24  court must accept all material allegations as true and construe them in the light most

25  favorable to the non-moving party."  Pharm. Mot. at 3:16–19 (citing *Moyo v.*

26  *Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994)).  Under the general rules of pleading, a

27  proper complaint is to "give fair notice and to enable the opposing party to defend

28  itself effectively . . . [and] plausibly suggest an entitlement to relief . . . ."  *Starr v.*

- 4 -

*Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  Federal Rule of Civil Procedure 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  This standard is satisfied when the pleading contains identifies "the circumstances constituting fraud so that a defendant can prepare an adequate answer to the allegations."  *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007) (quotation omitted).

Although Defendants urge the Court to reject unspecified "legal conclusions" (Pharm. Mot. at 3, Surg. Mot. at 4), they fail to note the wealth of detail provided in the FAC.  They also wish to reverse that portion of Rule 9(b) that says "the state of mind—or scienter—of the defendants may be alleged generally."  *Odom*, 486 F.3d at 554.  The Surgical Defendants quote the Second Circuit to say that State Fund must allege facts to "give rise to a strong inference of fraudulent intent."  Surg. Mot. at 17:11–14.  Yet the Ninth Circuit has expressly refused to read this requirement into Rule 9(b), and has reaffirmed that "plaintiffs may aver scienter generally, just as the rule states – that is, simply by saying scienter existed."  *Odom*, 486 F.3d at 554 (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547 (9th Cir. 1994), *superseded by statute on other grounds* (also stating at p. 1545 that "[o]ur first task is to determine whether we should adopt the Second Circuit's view that plaintiffs in . . . fraud cases must plead facts giving rise to a 'strong inference of fraudulent intent.'  We conclude that we should not.")).  In any event, the litany of schemes, concealment, and predicate acts in the FAC give rise to no other plausible inference than Defendants knew what they were doing was fraudulent.

The Pharmacy Defendants also label their motion as one for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  They do so in error.  As explained in Section V.A, a federal court "derives its jurisdiction from the United States Constitution and federal law, not from California law."  *Khan* (Ex. A)

at 7.  The California Legislature cannot take away federal jurisdiction granted by the United States Congress or Constitution.  Both motions come under Rule 12(b)(6).

## IV.  PRELIMINARY MATTERS

The Pharmacy and Surgical Defendants make nearly identical arguments in their motions to dismiss.  As such, State Fund asked Defendants' counsel if they would stipulate to a consolidated opposition brief.  Defendants refused, saying that a consolidated brief might confuse the Court, but agreed that State Fund could file two separate briefs incorporating arguments by reference (as Defendants did in their motions).  In this first opposition, State Fund has provided a summary of its position as to all Defendants' arguments (Section I), background facts (Section II), and governing law on the standard of review (Section III).  Below, State Fund responds to the main arguments of the Pharmacy Defendants: the lack of WCAB exclusivity (Section V.A), the fraudulently induced settlements (Section V.B), and the statute of limitations (Section V.C).  In its opposition to the Surgical Defendants' motion ("Surg. Opp."), State Fund addresses the Surgical Defendants' remaining arguments in its second opposition, explaining why neither the *Noerr-Pennington* doctrine nor the litigation privilege bar this action, and why the FAC satisfies all elements of the RICO causes of action.

## V.  ARGUMENT

### A.  This Court Has Jurisdiction Over State Fund's Claims

#### 1.  Federal Question Jurisdiction Is Unaffected By State Law

Defendants cite only state cases and statutes on workers' compensation exclusivity, ignoring the fact that they are in federal court, under *federal question* jurisdiction.  Pharm. Mot. at 4–16, Surg. Mot. at 4–7.  They effectively argue that the California Legislature can divest this Court of its duty to hear a RICO claim.

Under the Supremacy Clause (U.S. Const., art. VI, cl. 2), this simply cannot be.  *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

1  Specifically, the Ninth Circuit has held: "we [have] rejected the argument that

2  exclusivity provisions in state workers' compensation laws . . . could divest federal

3  courts of subject matter jurisdiction." *United States Fidelity & Guar. Co. v. Lee*

4  *Investments LLC*, 641 F.3d 1126, 1133 (9th Cir 2011).  WCA exclusivity provisions

5  are state law and do not apply to federal claims (such as RICO) in federal court.  *Id.*

6       As the Central District recognized in *Khan*, "[s]tates retain the authority to

7  prescribe the rules and procedures governing suits in their courts . . . however, that

8  authority does not extend so far as to permit States to place conditions on the

9  vindication of a federal right." *Khan* (Ex. A) at 7 (quoting *Felder v. Casey*, 487

10  U.S. 131, 147 (1988)).  A substantial federal interest exists in hearing federal RICO

11  claims regardless of overlap with a state workers' compensation system. *Tribune*

12  *Co. v. Purcigliotti*, 869 F. Supp. 1076, 1086 (S.D.N.Y. 1994).  In *Purcigliotti*, the

13  court held that exercising federal jurisdiction over a RICO claim would not

14  "interfere with the state's efforts to establish a coherent workers' compensation

15  policy." *Id.* at 1083–86.  The court held that "[t]he importance of the federal

16  questions presented in this case transcends the results of the factual issues presented

17  by the individuals' claims before the Workers' Compensation Board." *Id.* at 1085.

18  Here, the potential for interference with any Board proceedings is even less, because

19  only the providers' liens, and not the employee's statements about having suffered a

20  covered injury, are at issue.   Thus, Defendants' attempt to use state law to quell a

21  RICO suit in federal court fails at the start as a matter of federal court jurisdiction.

22       2.    WCA's Exclusivity Provisions Do Not Apply To State Fund's

23       Claims

24       Putting aside Defendants' jurisdictional problem, their arguments fare no

25  better under the WCA's language and structure.  "Importantly, the existence of a

26  workers' compensation remedy does not by itself establish that the remedy is

27  exclusive.  Rather, the scope of workers' compensation exclusivity depends on the

28  terms of the exclusive remedy provisions." *Collins v. Union Pac. R.R. Co.*, 207 Cal.

App. 4th 867, 876 (2012).  Defendants offer snippets out of context, but ignore the applicable language, case holdings (like *Vacanti*), and the WCA's rationale.

The WCA itself is the place to start the analysis, and makes plain that the exclusivity provisions are meant to protect employers and insurers.  Labor Code section 3600(a) provides that, "in lieu of any other liability whatsoever," employers will pay for employment-related injuries; in return, they are protected from employee lawsuits.  *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 708 (1994).  Section 3602(a) provides that "[w]here the conditions of compensation set forth in Section 3600 concur, the right to recover compensation is . . . the sole and exclusive remedy *of the employee or his or her dependents against the employer*." (emphasis added).  "The purposes of [the WCA] are several.  It seeks (1) to ensure that the cost of industrial injuries will be part of the cost of goods rather than a burden on society, (2) to guarantee prompt, limited compensation for an employee's work injuries, regardless of fault, as an inevitable cost of production, (3) to spur increased industrial safety, and (4) in return, to insulate the employer from tort liability for his employees' injuries."  *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 354 (1989).  An insurer is expressly included in the definition of "employer" in Labor Code section 3850(b), to enforce the exclusivity of the remedy and prevent an end-run by an employee or provider around the workers' compensation system.  So, as Defendants' authority states, "[t]he veil of protection cloaking employers by virtue of this exclusivity policy extends to workers' compensation insurance carriers as well."  *Hughes v. Argonaut Ins. Co.*, 88 Cal. App. 4th 517, 523 (2001) (quoted in Pharm. Mot. at 5:5–9, Surg. Mot. at 7:4–7).

3. <u>*Vacanti* Plainly Holds That The Exclusivity Doctrine Does Not Apply To RICO Claims By An Insurer</u>

(a) <u>*The Workers' Compensation Bargain*</u>

In *Charles J. Vacanti, M.D., Inc. v. State Compensation Insurance Fund*, 24 Cal. 4th 800 (2001), the California Supreme Court explained the basic WCA

- 8 -

bargain.  Under the WCA, "the employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability." *Id.* at 811 (citing *Shoemaker v. Myers*, 52 Cal. 3d 1, 16 (1990)).  In return, "[t]he employee is afforded relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort." *Id.*

Vacanti took pains to explain that the WCA's limited exclusivity provisions do *not* send every dispute touching on workers' compensation to the WCAB: "the existence of a workers' compensation remedy does not by itself establish that the remedy is exclusive." *Id*. at 817.  "Where compensation is available under division 4," the WCAB is the proper forum.  And since employees and providers have "remedies for the mishandling of workers' compensation claims . . . in division 4," these remedies are exclusive. *Id*. at 817–18.  As shown below, State Fund's claims are not covered by the bargain and are expressly allowed by *Vacanti*.

*(b)      The Injury Suffered And* Vacanti*'s First Prong*

The Court further detailed that "[i]n determining whether exclusivity bars a cause of action *against an employer or insurer*, courts initially determine whether the alleged injury falls within the scope of the exclusive remedy provisions." *Id.* at 811 (emphasis added; Defendants call this the "first prong" of *Vacanti*).  The Court held that it "established long ago that the WCAB has exclusive jurisdiction over *all* claims for compensation <u>against an employer or insurance carrier</u> involving medical, surgical, and hospital treatment to injured employees." *Id.* (underscoring added); *see also Lance Camper Mfg. Corp. v. Republic Indem. Co. of Am.*, 90 Cal. App. 4th 1151, 1161 (2001) (exclusivity applies to actions by employee or by one whose rights derive from employee's rights, such as providers); *Adams v. Liberty Mut. Ins. Co.*, 60 Mass. App. Ct. 55, 65 n.17, 799 N.E. 2d 130, 138 n.17 (2003) (California's WCA provides that "employer and insurer liability is restricted to that afforded by the workers' compensation statute 'in lieu of any other liability whatsoever to any

1  person' as 'the sole and exclusive remedy' against employers and insurers . . . .")
2  (citing *Vacanti* at 812–13).

3      Here, insurer State Fund is the plaintiff, and thus WCAB exclusivity meant to
4  protect employers and insurers *from* employees' or providers' tort actions does not
5  even apply.  *Vacanti*'s focus on "the alleged *injury*" further proves the point.  24
6  Cal. 4th at 811.  *Vacanti* holds that only injuries "to the worker's *person*, as opposed
7  to his *property*" are compensable under the WCA, so that courts allow even an
8  employee "to recover economic damages on a wrongful termination claim because
9  the damages arose out of the act of termination—and not out of an injury to the
10  employee's person."  *Vacanti*, 24 Cal. 4th at 814 (emphasis in original).  State
11  Fund's injuries "derive from" Defendants' fraudulent billing practices—not injuries
12  to an employee.  Employers/insurers on one hand, and employees on the other, are
13  on opposite sides of the table in the workers' compensation bargain, and an insurer's
14  claims are not derivative from any employee injury or right.  Further, State Fund
15  seeks tort damages, not "compensation" under the WCA—which are fundamentally
16  different things.  "[T]he superior court cannot award workmens' compensation
17  benefits, and the [WCAB] cannot award damages for injuries. . . . 'Compensation'
18  means compensation under Division 4 . . . 'Damages' means the recovery allowed in
19  an action at law as contrasted with compensation."  *La Jolla Beach & Tennis Club v.*
20  *Industrial Indem. Co.*, 9 Cal. 4th 27, 35–36 (1994) (cited in Pharm. Mot. at 5:1–3);
21  *see also id.* at 45–46 ("the jurisdiction of the WCAB and the superior court has
22  always been and remains distinct," so that a workers' compensation insurer does not
23  have a duty to defend civil actions seeking damages in court).

24      By contrast, the *Vacanti* provider-plaintiffs argued that the exclusivity
25  provisions did not apply to them because they were providers and not employees.
26  *Id.* at 815–16.  Yet the Court held that most of their claims were barred because
27  providers "stand in the place of the employees with respect to workers'
28  compensation benefits . . . .  Because employees are limited to WCA remedies for

- 10 -

1  all injuries caused by wrongful delays or refusal to pay, plaintiffs are limited to the

2  same." *Id.* at 816.  Even so, as discussed below, the *Vacanti* Court provided that all

3  RICO claims were not impacted by any exclusivity principle.

4                    *(c)*      Vacanti *Allows RICO Claims To Proceed*

5          As to *Vacanti*'s second inquiry—whether the alleged acts or motives fall

6  outside risks encompassed in the workers' compensation bargain—the Court held

7  that *the exclusivity provisions of the WCA do not apply to RICO claims at all*: "The

8  pattern of racketeering activity necessary to establish a RICO enterprise *always* falls

9  outside the scope of the compensation bargain. . . .  RICO claims are *never* subject

10 to the exclusive remedy provisions."  *Vacanti*, 24 Cal. 4th at 826 (emphasis added).

11         Defendants' attempt to mischaracterize this language as "dicta" fails.  *See*

12 Surg. Mot. at 6:18; Pharm. Mot. at 12:22–24.  *Vacanti*'s holding is not limited to

13 particular facts, nor to an "insurer conspiracy" as opposed to a provider one.  *See* 24

14 Cal. 4th at 826.  Defendants have not cited any case contrary to *Vacanti* that holds

15 RICO claims are barred by WCA exclusivity.  It is not the law, which runs in the

16 opposite direction.  *See Khan* (Ex. A) at 11:24–28 (citing *Vacanti*).  Citing a case for

17 the proposition that a conspiracy does not avoid workers' compensation exclusivity

18 – *Hazelwerdt v. Industrial Indemnity Exchange*, 157 Cal. App. 2d 759, 763 (1958)

19 (Pharm Mot. at 15:14–16) – loses its force when the case pre-dates the enactment of

20 RICO by over a decade.  And despite Defendants' protests that the defendant

21 insurers' main error was meddling in other insurers' claims (*e.g.*, Pharm. Mot. at

22 15), that same conduct happened here as well: for example, double-billing among

23 the Pharmacy Defendants (*e.g.*, FAC ¶¶ 141–50) and involving the Surgical

24 Defendants as well (*id.* ¶¶ 87–90), in addition to the Defendants using other

25 companies to disguise their transactions (FAC Sections V.A, VI.B, VI.C).

26         At base, providers' challenges to a "normal insurer activity" of processing

27 claim are barred.  *Vacanti*, 24 Cal. 4th at 823–24.  RICO claims, even by providers,

28 are not.  Thus, the provider—who engages in *no* normal employer or insurer activity

- 11 -

like processing claims—must take its disputes to the WCAB unless it has something akin to a RICO claim.

Even transplanting the *Vacanti* framework to claims *by* an insurer does not help Defendants here.  Defendants' actions constitute "organized and systemic criminal misconduct" that transcend the "various misdeeds" contemplated by the workers' compensation system.  *See Vacanti*, 24 Cal. 4th at 827.  State Fund has sufficiently alleged that Defendants repeatedly engaged in "conspiratorial acts" far outside the scope of normal provider behavior.  *Id.* at 820; *e.g.*, FAC ¶¶ 42–56, 65–73, 82–89.  This includes, for example, forming the company "International Implants," misrepresenting this company to be a manufacturer of spinal implants, and inflating device prices through a purchase/resale scheme based on this misrepresentation.  FAC ¶¶ 42–44.  This type of fraudulent behavior is well outside the behavior contemplated by the compensation bargain.  In *Khan*, the Central District found that the scheme to defraud State Fund by upcoding, unbundling and other measures, as undertaken by multiple defendants, was outside the bargain and that State Fund's RICO, fraud and UCL claims could proceed.  *Khan* (Ex. A) at 1:25–2:4, 11:26–28.  Defendants attempt to use assumptions and assertions from outside of the pleadings to argue that such fraudulent conduct is business as usual.  *See* Surg. Mot. at 7 n.3.  It is not, and neither the California Legislature nor public policy condone these practices.  *See* Surg. Opp., Section II.A.

### (d)   Serving The WCA's Intent And Policy

Hearing State Fund's RICO, fraud, and UCL claims will not somehow open a new, unfair loophole for defrauded insurers, contrary to Defendants' warnings.  State Fund has the right to its day in this Court.  Extending the exclusivity provisions to include RICO-based lawsuits by insurers against providers is not only unnecessary but undesirable.  Such a new rule would do nothing to ensure that employees promptly receive benefits, but would do much to ensure that fraud on insurers, employers, and taxpayers would continue.

- 12 -

The California Legislature wants "to combat the fraud and abuse that is rampant in the workers' compensation system." Cal. Lab. Code § 3820(a). It has found that this fraud "harms employers by contributing to the increasingly high cost of workers' compensation insurance and self-insurance and harms employees by undermining the perceived legitimacy of all workers' compensation claims." Cal. Ins. Code §§ 1871(d), 1871.4; *see also Khan* (Ex. A) at 11–12. "Prevention of workers' compensation insurance fraud will assist in restoring confidence and faith in the workers' compensation system, and will facilitate expedient and full compensation for employees injured at the workplace." Cal. Ins. Code § 1871(e). In enacting the Insurance Frauds Protection Act, the Legislature made clear that the Act's remedies were "in addition to any other remedies provided by existing law," Cal. Ins. Code § 1871.7(k), because it "intended to encompass fraudulent claims for workers' compensation benefits" and acknowledged that fraud by employees and providers should not be a part of the compensation bargain. *E.g.*, *People ex. rel. Monterey Mushrooms, Inc. v. Thompson*, 136 Cal. App. 4th 24, 29–31 (2006) (plaintiff insurer alleged defendants submitted false workers' compensation claims; despite defendants' characterization as "'a billing overcharge dispute' that had to be litigated within the confines of the workers' compensation system," court affirmed that exclusivity provisions of the WCA did not bar the action).

*Vacanti* recognizes that the workers' compensation system is not set up to have the WCAB be the final arbiter of everything touching on workers' compensation benefits. That is why federal courts, state courts, and the WCAB itself has held that California law does not authorize the WCAB to award the damages sought by State Fund. *See U.S. Fidelity*, 641 F.3d at 1135; *La Jolla Beach & Tennis Club*, 9 Cal 4th at 35, 46; *Haliban v. WCAB*, 68 Cal. Comp. Cases at 1871–72, 2003 Cal. Wrk. Comp. LEXIS 590. These claims for damages belong in court, and state law cannot make a federal RICO claim either disappear or be shunted to a state administrative body with limited jurisdiction and remedial power.

- 13 -

On the other hand, claims for compensation go before the WCAB.  It is the providers or employees who invoke the WCAB process.  The providers' fraudulent taking of an insurer's money is an injury qualitatively different and far removed from the employee's personal injury at the beginning of the employee claim process. Attempting to identify some remedy involving the WCAB, Defendants state that billing overcharge allegations are "routinely raised by insurers *as defenses* to providers' bills."  Surg. Mot. at 7 n.3 (emphasis added); *see also* Pharm Mot. at 16:8–9.  To be sure, liens by medical providers are within the WCAB's jurisdiction—as part of the bargain, providers must file them there and insurers can contest them there.  But unlike an employee or a provider, Division 4 of the Labor Code does not provide that State Fund can file a lien or seek *affirmative* relief there. Defendants have not and cannot point to any remedy within Division 4 that would exclude State Fund from seeking damages in this Court for successful and well-concealed fraud.

This jurisdictional division of labor helps to explain why no case cited by Defendants involves a lawsuit *by* an insurer or employer against an employee or provider.  *See, e.g.*, *Mitchell v. Scott Wetzel Servs., Inc.*, 227 Cal. App. 3d 1474, 1482 (1991) (suit barred against an insurer due to "[t]he immunity now afforded workers' compensation insurers") (Surg. Mot. at 5:18–20); *Marsh & McLennan, Inc. v. Superior Court*, 49 Cal. 3d 1, 11 (1989) ("sections 3602, 5300, and 5814 create a statutory scheme that preempts private causes of action by injured employees against" insurance claims administrators and adjusters) (Surg. Mot. at 5:25–6:1); *Edward Carey Const. Co. v. State Compensation Ins. Fund*, 194 Cal. App. 4th 657, 668–670 (2011) (employer brought suit against an insurer—bargain "protects not only employers *from* suit by employee claimants, but also workers' compensation insurers who . . . are viewed as 'alter egos' of employers.") (Surg. Mot. at 6:19–23).  Defendants' selective quotations try to muddy the waters but cannot change the basic principle.  For example, *Hand Rehabilitation Center v.*

- 14 -

*WCAB*, 34 Cal. App. 4th 1204, 1214 (1995), another case by a provider asserting a lien, makes the simple observation: "The WCAB has exclusive jurisdiction over workers' compensation medical liens.  [citations].  It is the only body authorized to consider such disputes and its decisions are subject to review by the appellate courts."  Surgical Defendants transform this limited statement regarding provider *liens* to say that the "WCAB 'is the only body authorized to consider [] disputes' over medical *charges*."  Surg. Mot. at 5:12–14 (emphasis added).  State Fund is not asserting a lien, but damages for fraud.  Properly read and quoted, these cases show why State Fund's action is different and belongs here.

Defendants also incorrectly describe the administrative proceeding before the WCAB.  State Fund's petition for consolidation and a *stay* of current lien proceedings merely argues that Defendants' liens should be resolved together, after an opportunity to consider State Fund's case.  Surg. Defs.' RJN, Ex. 1.  This is in response to the affirmative actions Defendants have taken before the WCAB, and acknowledges the proper roles of the WCAB and the federal courts in determining claims that do not involve an employee's claim for compensation.  Indeed, the cases cited by Defendants to support their *Noerr-Pennington* and litigation privilege arguments are ones in which providers were barred from suing insurers for consolidating or staying WCAB proceedings.  *See* Surg. Opp., Section II.A.

>    4.    State Fund Has Suffered Harm And Therefore Its Case Is Ripe

The Pharmacy Defendants also argue that State Fund's case is "neither justiciable or ripe, and will not be ripe until the WCAB rules on the matters within its exclusive jurisdiction."  Pharm. Mot. at 19:13–14.  The ripeness doctrine has no applicability where, as here, "plaintiff has alleged concrete and ongoing injuries that are not dependent upon the final adjudication of the workers' compensation claims." *Bath Unlimited, Inc. v. Ginarte, O'Dwyer, Winograd, and Laracuente*, 2005 WL 2406097, at *11 (D.N.J. Sept. 29, 2005).  Indeed, "the core of the action is a RICO claim, not a challenge to any action (or inaction) by the [WCAB]."  *Id.* at 12

1   (holding that "lack of finality of the Workers' Compensation proceeding is not

2   germane to the first prong of the ripeness inquiry").  As noted, State Fund does not

3   and cannot seek its *affirmative* relief before the WCAB.  *E.g.*, *U.S. Fidelity*, 641

4   F.3d at 1135.  There can be no argument that the WCAB is addressing all or even

5   most of the claims here.  The ripeness argument is simply a repackaged

6   "exclusivity" argument and should be rejected for the same reasons; indeed, by

7   asserting a hypocritical albeit erroneous statute of limitations argument, they have

8   conceded that the case is ripe (and ripened long ago).  The Pharmacy Defendants

9   have presented no reason, constitutional or prudential, why this Court may or should

10  refuse to exercise its obligation to hear this case.

11          **B.**     **<u>Fraudulently Induced Settlements Do Not Bar This Action</u>**

12          The Pharmacy Defendants' argument that the settlement agreements bar State

13  Fund's claims (the Surgical Defendants do not make this argument) ignores a

14  critical point:  Defendants' fraud in inducing State Fund to enter the Settlements

15  allows State Fund to rescind them .  *See* FAC ¶¶ 147–49 ("State Fund was unaware

16  of Defendants' pattern of racketeering activity when it entered into the settlement

17  agreements with the Defendants named therein.  Had Defendants disclosed the truth

18  about the Liens and underlying billings, State Fund would have not entered into the

19  settlement agreements. . . .").  Only through Defendants' continued fraud and

20  racketeering were they able to deceive State Fund into entering settlements on terms

21  extremely favorable to them.

22          "A settlement agreement is a contract, and the legal principles which apply to

23  contracts generally apply to settlement contracts."  *Canaan Taiwanese Christian*

24  *Church v. All World Mission Ministries*, 211 Cal. App. 4th 1115, 1123 (2012).  Civil

25  Code section 1689(b)(1) allows a party to rescind where its consent was obtained

26  through fraud.  "It is well established that a party to an agreement induced by

27  fraudulent misrepresentations or nondisclosures is entitled to rescind,

28  notwithstanding the existence of purported exculpatory provisions contained in the

agreement." *Ron Greenspan Volkswagen, Inc. v. Ford Motor Land. Dev. Corp.*, 32 Cal. App. 4th 985, 994–95 (1995).  "The service of a pleading in an action or proceeding that seeks relief based on rescission shall be deemed to be such notice." Cal. Civ. Code § 1691.  Since State Fund received no payment or consideration that can be restored to Defendants, State Fund has satisfied Section 1691's requirements. *See McNeese v. McNeese*, 190 Cal. 402, 405 (1923) ("where nothing is received to be restored, an offer to restore is impossible); *see also* Cal. Civ. Code § 1691 (requiring only that rescinding party *offer* to restore "upon condition that the other party do likewise") (emphasis added).  "Once a contract has been rescinded it is void *ab initio,* as if it never existed."  *Little v. Pullman*, 219 Cal. App. 4th 558, 560 (2013).  Thus, because State Fund has rescinded, it is as if these agreements have never existed.  This rescission includes each of the various provisions Pharmacy Defendants cite as purported bars to State Fund's claims.  *See* Pharm. Mot. at 17:18–19; 17:26–18:1.

Defendants urge this Court to overlook their fraud for the sake of finality.  To do so would not only be inequitable but would also rewrite California contract law: "A party to a contract who has been guilty of fraud in its inducement cannot absolve himself or herself from the effects of his or her fraud . . . .  [Any] stipulation or waiver will be ignored . . . for the reason that fraud renders the whole agreement voidable, *including the waiver provision.*"  *McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 794 (2008) (quoting 1 Witkin, *Summary of Cal. Law* Contracts § 304 (10th ed. 2005)) (emphasis added); *see also* Cal. Civ. Code § 1668 ("All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud . . . whether willful or negligent, are against the policy of the law.").  The *Khan* court recognized that even settlements approved by the WCAB, if tainted by fraud, can be rescinded in this Court.  *Khan* (Ex. A) at 6:21–25.  That the WCAB was also fooled does not immunize Defendants' conduct nor make the WCAB the only place that can determine whether the fraud took place.

- 17 -

The *Khan* court did suggest that a fraud claim may be necessary to preserve the rescissionary remedy sought; accordingly, State Fund is maintaining a fraud claim in *Khan* and in this action.

State Fund will prove fraud to justify rescission.  Yet at this stage, State Fund's fraud allegations and request for rescission are more than sufficient to treat the settlement agreements as void for purposes of these motions.  *See Jardine v. Maryland Cas. Co.*, 2011 WL 1585065, at *6 (N.D. Cal. Apr. 27, 2011) (denying defendant summary judgment based on plaintiff's release of his Section 1542 rights because defendant's "fraud, if proven, would render the Agreement unenforceable").

Indeed, the Pharmacy Defendants fail to show which claims or examples, if any, are supposedly covered by the agreements—certainly no claims post-dating the settlement agreements could be affected, and the last challenged settlements occurred in 2011.  FAC ¶ 148.  Even if their position had legal merit, and it does not, it plainly cannot bar any of State Fund's claims *in toto*.

### C.   Defendants' Statute Of Limitations Arguments Are Meritless

#### 1.   State Fund Did Not Have Notice As A Matter Of Law

A claim may not be dismissed on statute of limitations grounds "unless it appears *beyond doubt* that the plaintiff can prove no set of facts that would establish the timeliness of the claim."  *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995) (emphasis added); *U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013).  "Ordinarily, [the Ninth Circuit] leave[s] the question of whether a plaintiff knew or should have become aware of a fraud to the jury."  *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353, 365 (9th Cir. 2005).  This rule applies with great logical force here.

While denying their schemes and asserting their behavior was "entirely consistent with California law" (Surg. Mot. at 14:10–11), Defendants also assert that their schemes were "apparent on the face of the bills" and that State Fund "plainly

1   had all the facts necessary to discover its claims . . . ."  Surg. Mot. at 22:16–17,

2   23:9–10; *see also* Pharm. Mot. at 22–23.  Defendants argue they did nothing

3   wrong—but if they did, their schemes were obvious and State Fund, *as a matter of*

4   *law*, should have discovered them earlier.  Defendants cannot have it both ways.

5       Defendants argue that State Fund had actual or constructive notice of the

6   schemes and injuries.  *See* Surg. Mot. at 15–17; Pharm Mot. at 23.  The Pharmacy

7   Defendants argue that "SCIF alleges that it always knew that the Pharmacy

8   Defendants were overbilling . . . ."  Pharm Mot. at 23:13–15.  The Surgical

9   Defendants incorrectly argue that "any unbundling overcharges were apparent on

10  the face of the bills."  Surg Mot. at 16–17.  But as pleaded, the Individual

11  Defendants repeatedly formed new entities and discontinued others, part of a design

12  to make it impossible for State Fund to keep track—or understand the implications

13  of—Defendants' morphing entities and schemes.  FAC ¶ 151.  For example,

14  Defendants created International Implants and falsely represented it as an

15  independent device manufacturer in order to facilitate and conceal grossly inflated

16  prices.  FAC ¶¶ 42–46.  Defendants created PMR, a company through which Pacific

17  Hospital laundered its upcoded bills without ever informing State Fund.  FAC ¶ 72.

18      Further, double-billing is, by its very nature, not apparent on the face of any

19  one bill, nor is overcharging for implants or medications (the invoice may represent

20  the price paid, but as State Fund notes, not the cost).  Indeed, detection of

21  Defendants' double-billing schemes would require State Fund to analyze different

22  bills submitted on different dates by different providers, in an attempt to match dates

23  and services of bills that, on their face, may appear legitimate.  Defendants' other

24  schemes were no easier to discover.  Thus, it was not until federal and state

25  authorities—including the FBI, IRS and California Department of Insurance—

26  stunned the medical community on April 5, 2013, by executing search warrants on

27  the corporate offices of Pacific Hospital and IPM, that State Fund became aware of

28  Defendants' fraud.  FAC ¶ 154.  Once State Fund did become aware of Defendants'

schemes, it acted swiftly and with prudence, undertaking a comprehensive and systematic review of all Defendants' prior billings, and only through such intensive analysis was the systemic fraud and Defendants' concealment uncovered.  *See* FAC ¶¶ 29–30, 60, 64, 153–156.  State Fund reviews every bill it receives and acts with diligence, but has not been given sufficient resources from taxpayers nor its regulated premiums, to subject every single bill to such intense, systematic scrutiny; State Fund cannot be reasonably expected to do so.  *See* FAC ¶¶ 29–30.

Defendants' argument essentially boils down to "State Fund should have known" about the fraud.  But having access to bills that were the product of Defendants' fraudulent schemes certainly does not mean that, *as a matter of law*, State Fund knew or should have known of the schemes.  *See Dias v. Nationwide Life Ins. Co.*, 700 F. Supp. 2d 1204, 1223–24 (E.D. Cal. 2010) (receiving bill for insurance premium payments did not, as a matter of law, give plaintiffs constructive notice of their injury from "vanishing premiums" fraud); *see also CSX Transp. Inc. v. Gilkison*, 406 F. App'x 723, 729–30 (4th Cir. Dec. 30, 2010) (settling of defendants' fraudulent asbestosis lawsuits did not, as a matter of law, mean that plaintiffs knew the lawsuits or underlying scheme of procuring plaintiffs were fraudulent).  Such a rule would preclude nearly any claim for fraud, so long as the fraudster sent the victim a bill.  This is not and never has been the law.

2.      The Injury Discovery And Separate Accrual Rules Confirm The Timeliness Of State Fund's Claims

The law makes plain that State Fund's claims are timely and that Defendants' systematic efforts to actively conceal their fraudulent schemes are not an excuse.  Under the injury discovery rule, which applies to all of State Fund's claims, the limitations period does not begin to run "until a plaintiff knows, or should know, of the injury that underlies his cause of action."  *E.g.*, *Living Designs*, 431 F.3d at 365 ("Plaintiffs have tendered sufficient evidence to raise a genuine issue of material fact as to when they knew of or should have discovered the fraud [underlying RICO

claims].”); *O'Connor v. Boeing North Am., Inc.*, 311 F.3d 1139, 1152–53 (9th Cir. 2002) (“The district court erred in concluding as a matter of law that newspaper reports concerning the Defendants' facilities were sufficiently 'numerous' and 'notorious' to impute knowledge of them to Plaintiffs.”); *see also Aryeh v. Canon Business Solutions, Inc.*, 55 Cal. 4th 1185, 1197 (2013) (discovery rule applies to UCL claims).  The facts in the FAC establish the operation of this rule.

The injury discovery rule also includes the separate accrual rule.  This provides that a new cause of action accrues for each new and independent injury, even if the RICO violation causing the injury happened more than four years before. *State Farm Mut. Auto Ins. Co. v. Ammann*, 828 F.2d 4, 5 (9th Cir. 1987) (Kennedy, J. concurring); *see also Molus v. Swan*, 2007 WL 2326132 at *7 (S.D. Cal. Aug. 13, 2007) (cited in Surg. Mot. at 22:23–26).  Under the separate accrual rule, an overt act will start a new limitations period if it is “a new and independent act that is not merely a reaffirmation of a previous act” and it “inflict[s] new and accumulating injury on the plaintiff.”  *Molus*, 2007 WL 2326132 at *7.

Sometimes, Defendants incorrectly posit that this rule does not apply to post-June 2009 acts set forth in the FAC, because, Defendants say, these acts “are mere reaffirmations of, and directly relate to, the same alleged common scheme of submitting fraudulent bills for spinal implants and medical services.”  Surg. Mot. at 23:21–24; Pharm. Mot. at 23.  Yet as their own authority states, every new invoice is “a new bill, rather than a reaffirmation of an earlier due invoice.  Each also inflicted a new injury because it demanded money for work allegedly not performed.”  *Molus*, 2007 WL 2326132 at *7.  Thus, the separate accrual rule at least applies to post-June 2009 acts, and a new cause of action accrues for each such act.  It is legally indisputable that State Fund's RICO claims for injuries suffered after June 24, 2009—four years before State Fund's initial complaint—are timely. *Living Designs,* 431 F.3d at 365.  In fact, the Surgical Defendants realize the error at one point and are forced to admit that, at most, “[t]he vast majority of State Fund's

claims are thus barred by the statute of limitations, since they accrued prior to June 25, 2009." Surg. Mot. at 22:8. Defendants' confusion in presenting their position is understandable, as it is untenable; under the facts alleged, *all* claims are timely.

Indeed, Defendants fail to understand RICO's structure; while establishing a four-year statute of limitations for civil claims which begins running only upon discovery of the injury, predicate acts in the past ten years can be used to establish the existence of a racketeering enterprise. 18 U.S.C. § 1961(5). RICO thus contemplates that a predicate act ten years in the past (or more) will be relevant to establishing a claim, and does not punish a RICO plaintiff by eliminating a RICO claim for failure to recognize the racketeering activity immediately.

Further, as the *Khan* Court held, State Fund's injuries include payments on fraudulent bills by State Fund to Defendants that were required under the Settlement Agreements, further lengthening the period—it runs not from receipt of a bill, but from the injury of paying a fraudulent claim, including by settlement payments. *Khan* (Ex. A) at 14:21–23; *e.g.*, FAC ¶¶ 147–50, 221–29.

> 3.  Fraudulent Concealment Also Tolls The Statute Of Limitations

Similar to the injury discovery rule is the doctrine of fraudulent concealment, which tolls a statute of limitations when defendants actively conceal wrongdoing. The doctrine is properly invoked when a plaintiff alleges affirmative conduct upon the part of the defendant which would, under the circumstances, lead a reasonable person to believe that he did not have a claim for relief. *E.g.*, *N.L.R.B. v. O'Neil*, 965 F.2d 1522, 1526–27 (9th Cir. 1992) (statute of limitations tolled). Here, State Fund is entitled to move past the pleading stage based on its detailed allegations. Where a plaintiff pleads that a defendant "actively concealed" a scheme, the limitations period is tolled until plaintiff was reasonably on notice of the scheme. *eBay Inc. v. Digital Point Solutions, Inc.*, 2009 WL 2523733, at *8 (N.D. Cal. Aug. 17, 2009) (denying motion to dismiss RICO claim when concealment alleged in complaint). State Fund's allegations also support the operation of the fraudulent

1  concealment doctrine to toll the statute of limitations, even though the injury

2  discovery and separate accrual rules are sufficient to defeat Defendants' argument.

3      The facts and equitable doctrines discussed—along with additional related

4  doctrines such as "continuing violation" and "continuous accrual," *Aryeh*, 55 Cal.

5  4th at 1198) (not detailed for brevity), show that State Fund's claims are timely.

6  **VI.  <u>CONCLUSION</u>**

7      This is a serious federal fraud case.  It has not been entrusted to the limited

8  jurisdiction of the WCAB, and neither prior agreements procured by fraud nor the

9  statute of limitations defeat it.  Moreover, for the reasons set forth in the Surgical

10 Opposition, State Fund's claims are neither barred by the *Noerr-Pennington*

11 doctrine nor the litigation privilege, and the applicability of RICO to Defendants'

12 conduct is beyond serious argument.  State Fund has described in abundant detail

13 how Defendants have broken the law and defrauded State Fund, and it has explained

14 why it is entitled to remedies in this Court.  Defendants' motions should be denied.

15 Should this Court grant any part of the motions, State Fund requests leave to amend

16 under Federal Rule of Civil Procedure 15(a)(2) ("[t]he court should freely give leave

17 when justice so requires"), especially since these motions represent the first

18 challenge to State Fund's pleading.  State Fund amended its initial complaint once

19 with Defendants' agreement, after giving Defendants extensions of time to respond

20 and taking into consideration Defendants' oral objections to the initial complaint.

21

22 Dated:  October 21, 2013                          Respectfully submitted,

23                                                   IRELL & MANELLA LLP

24

25

26                                                   By:_____/s/ John C. Hueston_____

27                                                        John C. Hueston
                                                         Attorneys for Plaintiff
28                                                       State Compensation Insurance Fund

State Fund's First Opposition (Pharmacy Defendants' Motion to Dismiss)
Case No. 13-009956 AG (CWx)