1 | IRELL & MANELLA LLP
John C. Hueston (164921; jhueston@irell.com)
2 | Michael R. Fehner (207312; mfehner@irell.com)
840 Newport Center Drive, Suite 400
3 | Newport Beach, California 92660-6324
Telephone:  (949) 760-0991
4 | Facsimile:  (949) 760-5200

5 | STATE COMPENSATION INSURANCE FUND
Linda S. Platisha (195281; lsplatisha@scif.com)
6 | 1750 E. Fourth Street, Suite 450
Santa Ana, California 92705
7 | Telephone:  (714) 347-6130
Facsimile:   (714) 347-6145

8 |
Attorneys for Plaintiff
9 | STATE COMPENSATION
INSURANCE FUND, a Public
10 | Enterprise Fund and Independent
Agency of the State of California

11 |

12 | UNITED STATES DISTRICT COURT

13 | CENTRAL DISTRICT OF CALIFORNIA

14 | SOUTHERN DIVISION

15 | STATE COMPENSATION
INSURANCE FUND,

Case No. 13-00956 AG (CWx)

16 | **STATE COMPENSATION
INSURANCE FUND'S**

17 | Plaintiff, | **MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION**

v. | **TO MOTION TO DISQUALIFY**

18 | MICHAEL D. DROBOT, SR., et al., | **IRELL & MANELLA LLP**

19 |

Defendants. | [Filed concurrently with the

20 | Declarations of Mark L. Tuft, Carol R.
Newman, Lisa Stolzy, Vincent P.

21 | Codispoti, Vera De Martini, Jody
DeBernardi, Linda S. Platisha, Lisa S.

22 | Tang, Harry Mittleman, John C.
Hueston, Brian Hennigan, Alison

23 | Plessman, Michael Fehner, Padraic
Foran, Steven N. Feldman, David B.

24 | Clark, Michael Behrens, Jennifer Bunn,
Lauren E. Shaw, and Diane Brookes;

25 | and Motion to Seal with Proposed Order
and Declaration of Service]

26 |

27 | Date:     June 23, 2014
Time:     10:00 a.m.

28 | Ctrm:     10D
Judge:   Hon. Andrew J. Guilford

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................1

II.   FACTUAL BACKGROUND .................................................................2

    A.    I&M Was Retained By State Fund To Investigate Potential
        RICO Claims Against Defendants. ...................................................2

    B.    After An Independent Investigation, I&M Filed A RICO
        Complaint Against Defendants. ........................................................3

    C.    Almost A Year Into The Litigation, Defendants Move To
        Disqualify I&M Based On Communications Drobot Had
        With A Former I&M Partner. .............................................................4

    D.    An Independent Analysis By I&M's In-House General
        Counsel Confirmed That No Confidential Information
        Was Communicated From Sant To Any Current I&M
        Attorney..............................................................................................4

        1.    Sant Did Not Open A Client File For Drobot And
            The Work Consisted Of General Transactional
            Advice Unrelated To This Litigation........................................5

        2.    Sant Informed Drobot In Writing That I&M Could
            Not Represent Him In Connection With The State
            Fund Settlement. .......................................................................6

        3.    Sant Leaves I&M In March 2011 Without
            Conveying Any Confidential Information To Any
            Current I&M Attorneys. ...........................................................7

III.  LEGAL STANDARD FOR VICARIOUS
      DISQUALIFICATION .................................................................................8

IV.   ARGUMENT .......................................................................................10

    A.    Vicarious Disqualification Does Not Apply In These
        Circumstances. .................................................................................10

        1.    Sant Did Not "Actually Convey[]" Confidential
            Information To Any Current State Fund Or I&M
            Attorneys...................................................................................11

        2.    State Fund's Allegations Of Fraud Against
            Defendants Are Based On Public Information And
            An Analysis Of Its Own Billing Records. ...............................13

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- i -

3062964

**Page**

3.    This Lawsuit Does Not Attack Sant's Prior Work. .................14

4.    Implicated Policy Considerations Weigh In I&M's Favor. .................15

B.    Drobot Waived His Right To Seek Disqualification Of I&M. .................15

1.    The Moving Defendants Sought Disqualification Only After Their Several Prior Attempts to Stay Discovery Had Failed. .................16

2.    The Moving Defendants Have Not Justified Their 11-Month Delay In Seeking Disqualification.................17

3.    State Fund Would Suffer Significant Prejudice If The Motion Is Granted As I&M Has Expended Significant Time And Resources Successfully Advocating For State Fund In This Complex Case.................19

C.    Disqualifying State Fund's Interim CEO, Interim General Counsel And Other In-House Counsel Would Be Unprecedented And Effectively Prevent State Fund From Prosecuting This Case. .................21

V.    CONCLUSION .................25

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- ii -

3062964

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO
DISQUALIFY IRELL & MANELLA LLP

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

<u>Cases</u>

4

*Advanced Messaging Techs., Inc. v. Easylink Services Intl. Corp.,*
  913 F.Supp.2d 900 (C.D. Cal. 2012) ..................................................................... 23, 24, 25

5

*Barco N.V. v. Tech. Props. Ltd.,*
  No. 5:08-cv-05398 JF (HRL), 2011 WL 841283 (N.D. Cal. Mar. 8, 2011) ....................... 11

6

*Canatella v. Krieg, Keller, Sloan, Reilley & Roman LLP,*
  No. C 11-05535 WHA, 2012 WL 847493 (N.D. Cal. Mar. 13, 2012) ............................... 23

7

8

*Derivi Constr. & Architecture, Inc.,*
  118 Cal. App. 4th 1268 (2004) ....................................................................................... 22

9

10

*Elan Transdermal Ltd. v. Cygnus Therapeutic Systems,*
  809 F. Supp. 1383 (N.D. Cal. 1992) ................................................................................ 9

11

*Emp'rs Ins. of Wausau v. Albert D. Seeno Constr. Co.,*
  692 F. Supp. 1150 (N.D. Cal. 1988) .............................................................................. 16

12

13

*FlatWorld Interactives LLC v. Apple Inc.,*
  No. 12-cv-01956-WHO, 2013 WL 4039799 (N.D. Cal. Aug. 7, 2013) .......... 11, 12, 23, 24

14

*Frazier v. Superior Court,*
  97 Cal. App. 4th 23 (2002) ..................................................................................... 23, 25

15

16

*Goldberg v. Warner/Chappell Music, Inc.,*
  125 Cal. App. 4th 752 (2005) ...................................................................................... 8, 9

17

*Guifu Li v. A Perfect Day Franchise, Inc.,*
  No. 11-CV-01189-LHK, 2011 WL 4635176 at *6 (N.D. Cal. Oct. 5, 2011) .................. 23

18

19

*H.F. Ahmanson & Co. v. Salomon Bros., Inc.,*
  229 Cal. App. 3d 1445 (1991) ..................................................................................... 8, 16

20

*Halladay & Mim Mack Inc. v. Trabuco Capital Partners Inc.,*
  No. SACV 08-1138 AG (MLGx), 2009 WL 3244746 (C.D. Cal. Oct. 5,
  2009) .......................................................................................................................... 11

21

22

*In Re Airport Car Rental Antitrust Litig.,*
  470 F. Supp. 495 (N.D.Cal.1979) ............................................................................ 23, 24

23

24

*Kirk v. First Am. Title Ins. Co.,*
  183 Cal. App. 4th 776 (2010) ................................................................................. passim

25

*Liberty Nat'l Enters., L.P. v. Chicago Tit. Ins. Co.,*
  194 Cal. App. 4th 839 (2011) ....................................................................... 16, 17, 19, 20

26

27

*Love v. Permanente Med. Grp.,*
  No. 12-CV-05679-WHO, 2013 WL 5273213 (N.D. Cal. Sept. 18, 2013) ..................... 23

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

**Page(s)**

*Miller v. Alagna*,
    138 F. Supp. 2d 1252 (C.D. Cal. 2000) ........................................................... 16

*Openwave Sys. Inc. v. Myriad Fr. S.A.S.*,
    No. C 10–02805 WHA, 2011 WL 1225978 (N.D. Cal. Mar. 31, 2011) ........................... 16

*Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*,
    760 F.2d 1045 (9th Cir. 1985) ......................................................................... 8

*Oracle Am., Inc. v. Innovative Tech. Dist., LLC*,
    No. 11-CV-01043-LHK, 2011 WL 2940313 (N.D. Cal. July 20, 2011) ............... 8, 11, 23

*People ex rel. Dept. of Corps. v. SpeeDee Oil Change Sys., Inc.*,
    20 Cal. 4th 1135 (1999) ................................................................................ 25

*Pound v. DeMera DeMera Cameron*,
    135 Cal. App. 4th 70 (2005) ................................................................. 23, 24, 25

*River West, Inc. v. Nickel*,
    188 Cal. App. 3d 1297 (1987) ......................................................................... 17

*Sharma v. VW Credit, Inc.*,
    No. CV 11-08360 DDP EX, 2013 WL 1163801 (C.D. Cal. Mar. 20, 2013) ........ 16, 19, 20

*Sharp v. Next Entm't, Inc.*,
    163 Cal. App. 4th 410 (2008) .......................................................................... 20

*Skyy Spirits, LLC v. Rubyy, LLC*,
    No. C 09–00646 WHA, 2009 WL 3762418 (N.D. Cal. Nov. 9, 2009) ....................... 16, 20

*Trust Corp. of Montana v. Piper Aircraft Corp.*,
    701 F.2d 85 (9th Cir. 1983) ....................................................................... 15, 21

*UMG Recordings, Inc. v. MySpace, Inc.*,
    526 F. Supp. 2d 1046 (C.D. Cal. 2007) ............................................................. 25

*Western Cont'l Op. Co. v. Natural Gas Corp.*,
    212 Cal. App. 3d 752 (1989) ........................................................................... 17

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3062964

- iv -

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISQUALIFY
IRELL & MANELLA LLP

# I.     **INTRODUCTION**

Defendants Michael Drobot, Jr. ("Drobot"), IPM, and CPM (collectively, "Moving Defendants") base their Motion to Disqualify Irell & Manella LLP ("I&M") and in-house counsel for Plaintiff State Compensation Insurance Fund ("State Fund") on incorrect legal standards, misrepresentations of fact, and hyperbolic rhetoric.

I&M does not dispute that former I&M partner Matt Sant ("Sant") communicated with Drobot in the summer of 2010 regarding Drobot's proposed business transaction that Drobot had negotiated with his father.  However, Sant never opened a client file for Drobot, nor obtained I&M's approval to represent Drobot, so no current I&M attorney working on the State Fund matter or State Fund in-house attorney was aware of Sant's work for Drobot until Drobot's counsel belatedly raised the issue in May 2014.

Sant left I&M in March 2011—more than two years before State Fund filed the complaint in this action.  After Drobot raised his assertion of a conflict for the first time in May 2014, I&M's Office of the General Counsel investigated Drobot's claims and concluded that Sant's communications with Drobot did not involve any legal advice concerning, nor any substantive discussion of, Drobot's settlement with State Fund.  To the contrary, contemporaneous documents demonstrate that Sant told Drobot both orally and in writing that I&M ***could not*** represent Drobot in connection with the State Fund settlement.  And, as to Sant's communications with Drobot concerning the business transaction with Drobot's father, those communications have never been received, accessed, or viewed by any I&M or State Fund attorney working on this case.

Under the correct legal standard, I&M should not be disqualified from its representation of State Fund unless the Moving Defendants can demonstrate that Sant ***actually conveyed*** confidential information to current State Fund and I&M

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3062964

1   attorneys.  The Moving Defendants cannot do so, because Sant did not do so.

2   Vicarious disqualification does not apply.

3        Moreover and separately, the Moving Defendants have waived their right to

4   seek disqualification by waiting nearly a year after this action was filed and served

5   before raising the purported "conflict."  Although the Moving Defendants claim to

6   have realized the connection between Sant and Drobot only recently, numerous

7   statements in their Motion and declarations are directly contrary to those assertions.

8   The Court should view the Motion for what it is: yet another attempt by the Moving

9   Defendants to stay this action pending the criminal investigation of Drobot.  The

10  Motion should be denied.

11  II.    **FACTUAL BACKGROUND**

12       A.    **I&M Was Retained By State Fund To Investigate Potential RICO**
                **Claims Against Defendants.**

13
         In June 2013, I&M's lead counsel, John Hueston, ran a conflict check for a
14
     potential insurance fraud case that State Fund had asked Mr. Hueston to handle.
15
     Declaration of John C. Hueston ("Hueston Decl.") ¶ 2.  The results of Mr. Hueston's
16
     conflict check reflected that none of Drobot, IPM, CPM, or any other named
17
     Defendant herein had ever been a client of I&M.  *See id.* ¶ 3.  Neither Mr. Hueston
18
     nor any other current I&M attorney was aware at that time that Mr. Sant had ever
19
     done any work for Drobot.  *Id.* ¶ 4; Declaration of Brian Hennigan ("Hennigan
20
     Decl.") ¶ 3; Declaration of Harry Mittleman ("Mittleman Decl.") ¶ 2; Declaration of
21
     Michael Fehner ("Fehner Decl.") ¶ 2; Declaration of Alison Plessman ("Plessman
22
     Decl.") ¶ 2; Declaration of Jennifer Bunn ("Bunn Decl.") ¶ 2; Declaration of David
23
     B. Clark ("Clark Decl.") ¶ 3; Declaration of Michael Behrens ("Behrens Decl.") ¶ 2;
24
     Declaration of Lauren E. Shaw ("Shaw Decl.") ¶ 2; Declaration of Padraic Foran
25
     ("Foran Decl.") ¶ 3; Declaration of Steven N. Feldman ("Feldman Decl.") ¶ 3.
26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3062964

- 2 -

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISQUALIFY
IRELL & MANELLA LLP

**B.     After An Independent Investigation, I&M Filed A RICO Complaint Against Defendants.**

Contrary to assertions made in Defendants' motion, the complaint filed in this action ("FAC") was based upon the independent investigation done by I&M and State Fund—not on any information provided by Drobot to Sant.  This is made abundantly clear by the allegations contained in the FAC, which cite to public sources combined with I&M's and State Fund's analysis of State Fund's internal billing records.  Specifically, State Fund alleges various connections between the individual Defendants and the entity Defendants "as demonstrated by public records, including California Secretary of State records[.]"  FAC ¶ 11.  Numerous examples of those records are cited in the FAC:

- IPM's "Statement of Information filed with the California Secretary of State on September 7, 2007" lists Drobot, Sr. "as the sole manager," while in its May 31, 2011 Statement of Information, Drobot Jr. was listed as the sole manager." *Id.* ¶ 15.

- "According to California state public records, after a 2005 inspection of CPM, the California Board of Pharmacy on October 28, 2005 ordered CPM to cease and desist operations" . . . "In a letter to the California Board of Pharmacy dated December 6, 2005," CPM falsely stated that it ceased operations even though "it billed State Fund for over 7,000 prescriptions from October 28, 2005 through the end of 2005 alone." *Id.* ¶¶ 96–97.

- "IPM's wholesale license expired on September 1, 2012, according to California state public records," yet IPM "continued to bill State fund for pharmaceuticals provided after that date."  *Id.* ¶ 99 (referencing bills submitted by CPM and IPM to support allegations of double billing).

State Fund also cited public filings and media reports about prior litigations to support its allegations, including Drobot's sworn declaration from a 2009 Los Angeles Superior Court case in which he stated that "CPM does not employ or pay

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3062964

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISQUALIFY
IRELL & MANELLA LLP

pharmacy technicians," who are instead "obtained through a third-party registry . . . owned by Michael Drobot, Sr., my father" (*id.* ¶ 35); an unsealed *qui tam* complaint alleging similar types of insurance fraud against many of the Individual and Entity Defendants (*id.* ¶ 36); and reports from "numerous publications and media outlets" about federal and state search warrants served on the corporate offices of Pacific Hospital and IPM in April 2013. *Id.* ¶ 154.

C.     **Almost A Year Into The Litigation, Defendants Move To Disqualify I&M Based On Communications Drobot Had With A Former I&M Partner.**

This litigation has been going on for almost a year.  For months, Defendants have sought, without success, to stay discovery or otherwise derail this action pending conclusion of the criminal investigation against Drobot, Jr. and Drobot, Sr., the individual Defendants.  State Fund has successfully defeated two motions to dismiss (Dkt. Nos. 40–44), a motion for abstention under various doctrines (Dkt. No. 60), a motion and joinder to certify the denial of motions to dismiss for interlocutory appeal (Dkt. Nos. 71 and 72), two motions to sever claims (Dkt. Nos. 73 and 75), and two motions to stay discovery (Dkt. Nos. 90 and 115), with another stay motion pending (Dkt. No. 142).  Now, after a year of unsuccessful efforts to delay this litigation, Drobot has "remembered" that he had consulted with Sant in 2010, and that the consultation purportedly related to this current action.  Based on that recovered memory, Defendants contacted I&M and State Fund on May 12, 2014 to demand that the parties stay discovery and that I&M (and every in-house attorney at State Fund who works on this case) withdraw from this representation.

D.     **An Independent Analysis By I&M's In-House General Counsel Confirmed That No Confidential Information Was Communicated From Sant To Any Current I&M Attorney.**

Promptly after receiving the May 12, 2014 letter from Drobot's attorney asserting an ethical conflict, I&M's Office of the General Counsel commenced an investigation into Drobot's claims.  That investigation showed that in the summer of

- 4 -

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations
3062964
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISQUALIFY
IRELL & MANELLA LLP

2010, an ex-I&M partner, Matt Sant, communicated with Drobot for a period of approximately six weeks concerning a proposed business transaction between Drobot and his father.  *See* Mittleman Decl. ¶¶ 3,11.  However, as explained below, until receiving the May 12, 2014 letter, no current attorney at I&M or State Fund had any knowledge of any substantive work that Mr. Sant had done for Drobot.

> 1. <u>Sant Did Not Open A Client File For Drobot And The Work Consisted Of General Transactional Advice Unrelated To This Litigation.</u>

Sant was introduced to Drobot via email in late May 2010, and subsequently began to work with Drobot on a business transaction that Drobot had already negotiated with his father.  Mittleman Decl. ¶ 12, Ex. A ("Sant Depo."), at 26:4-18; 94:2-17.  This work spanned approximately six weeks (through mid-July 2010), and primarily consisted of reviewing, editing, and commenting on draft transaction documents that had been prepared by another attorney representing one of the Drobots.  *Id.* at 35:1-19; 65:15–66:14.  Sant has described his role in the transaction as "discrete," and Sant's role essentially involved implementing terms that Drobot and his father had already agreed to.  *Id.* at 30:25–31:15; 94:2-17, 99:22–100:5.

In connection with this "discrete" work that Sant performed for Drobot, Sant did not follow I&M's prescribed intake procedures.  For example, he did not (1) prepare a New Matter Memo; (2) open a client billing and matter number (*id.* at 29:19-25); (3) seek and obtain the approval of I&M's intake committee (*id.* at 141:24–142:15); or (4) obtain a signed engagement letter from Drobot (*id.* at 30:25-31:15).  *See* Mittleman Decl. ¶¶ 3–6.  Because Sant did not follow I&M's intake procedures, I&M had (and has) no record of Drobot or any of the other Defendants in this action ever having been a client of the firm.  *Id.* ¶ 3.

I&M's Office of the General Counsel has recently accessed the email communications between Sant and Drobot.  Consistent with Sant's deposition testimony, the substance of the emails Sant exchanged with Drobot reveals that Sant

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3062964

- 5 -

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISQUALIFY
IRELL & MANELLA LLP

simply provided Drobot with general legal advice regarding Drobot's proposed

transaction with his father.  For example, Sant made suggested edits to various

purchase agreements in an attempt to simplify the agreements, to ensure Drobot that

he was buying what he thought he was buying, and to streamline the transaction

documents.  I&M is willing to provide the Court with the entire set of records

located for an *in camera* review.  None of Sant's work regarding Drobot's

transaction with his father formed the basis for any of the allegations in State Fund's

complaint in this action, which, as set forth above, were drawn from publicly

available documents and State Fund's internal billing records at a time when both

I&M and State Fund were unaware that Sant had done any work for Drobot.[1]

> 2.   <u>Sant Informed Drobot In Writing That I&M Could Not Represent Him In Connection With The State Fund Settlement.</u>

In late August 2010, Drobot approached Sant for advice regarding a proposed

settlement with State Fund.  On August 30, 2010, Sant ran a conflict check to

determine whether he could represent Drobot in this new matter.  Sant Depo. at

112:18–113:19.  I&M has no record that Mr. Sant ever ran a conflict check

regarding Mr. Drobot or any of his affiliated entities prior to August 30, 2010.

Mittleman Decl. ¶ 8.  The August 30, 2010 conflict check revealed a potential

conflict.  Sant Depo. at 112:18–113:19.  Sant subsequently received a call from

Brian Hennigan, an I&M partner, who explained that Mr. Hennigan had recently

begun representing a client who was a business affiliate of Drobot's father, and that

in an "abundance of caution," I&M should not undertake to represent Drobot

without obtaining conflict waivers both from Mr. Hennigan's client and from

Drobot.  *Id.* at 118:1–119:20; 127:5-23; Hennigan Decl. ¶ 2.

---

[1] Although State Fund did not initiate this litigation until 2013, dozens of allegations in the FAC relate to Defendants' conduct from 1997 to May 2010—i.e., before Drobot approached Sant to seek his help with the purchase transactions. *See, e.g.*, FAC ¶¶ 12, 15, 32, 33, 39, 56, 88, 96, 97, 103, 118, 119, 121, 127, 130, 131, 138, 139, 140, and 148.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3062964

- 6 -

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISQUALIFY
IRELL & MANELLA LLP

Accordingly, on August 31, 2010, Sant called Drobot and explained that I&M would not be able to represent him in connection with the settlement with State Fund, and that I&M would need to obtain waivers in order to represent Drobot in connection with any future matter. Sant Depo. at 124:18–125:11; 168:9–172:8. Sant confirmed this conversation in a contemporaneous email to Mr. Hennigan. *Id*.; Mittleman Decl. ¶ 13, Ex. B. Sant then separately confirmed the conversation in an email directly to Drobot stating: "***I apologize that we were unable to represent you in this matter[.]***" Mittleman Decl. ¶ 14, Ex. C (emphasis added). Sant's August 31, 2010 email to Drobot directly refutes Moving Defendants' representation to this Court that they "are confident that no such document exists[.]" Mot. at 10.

On September 20, 2010, Drobot wrote an email to Sant asking whether Sant could represent Drobot in a different matter involving his father, and inquired whether Sant had "obtain[ed] clearance to represent me/IPM[.]" Mittleman Decl. ¶ 15, Ex. D. Sant testified that he understood that Drobot's question was a reference to Sant's discussion with Drobot on August 31, 2010 in which he had explained that I&M would want to have conflict waivers in order to represent Drobot with any future matter because of Mr. Hennigan's concurrent representation of a business associate of Drobot's father. Sant Depo. 157:10–159:7.

### 3. Sant Leaves I&M In March 2011 Without Conveying Any Confidential Information To Any Current I&M Attorneys.

In March 2011, Sant left his position at I&M. At no point before, during, or after his time at I&M did Sant convey any of the Moving Defendants' purportedly confidential information to anyone currently at I&M. Hueston Decl. ¶ 4; Hennigan Decl. ¶ 3; Mittleman Decl. ¶ 2; Fehner Decl. ¶ 2; Plessman Decl. ¶ 2; Bunn Decl. ¶ 2; Behrens Decl. ¶ 2; Shaw Decl. ¶ 2; Foran Decl. ¶ 3; Clark Decl. ¶ 3; Feldman Decl. ¶ 3; Sant Depo. 142:16–143:14. Indeed, I&M was not aware that Sant had done work for Drobot, let alone the substance of that work, until Drobot raised the issue for the first time in May 2014. Hueston Decl. ¶ 4; Hennigan Decl. ¶ 3;

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3062964

- 7 -

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISQUALIFY
IRELL & MANELLA LLP

1   Mittleman Decl. ¶ 2; Fehner Decl. ¶ 2; Plessman Decl. ¶ 2; Bunn Decl. ¶ 2; Behrens

2   Decl. ¶ 2; Shaw Decl. ¶ 2; Foran Decl. ¶ 3; Clark Decl. ¶ 3; Feldman Decl. ¶ 3.

3          The same is true for State Fund's in-house counsel.  Declaration of Carol R.

4   Newman ("Newman Decl.") ¶ 2; Declaration of Linda S. Platisha ("Platisha Decl.")

5   ¶ 2; Declaration of Lisa Stolzy ("Stolzy Decl.") ¶ 2; Declaration of Vincent P.

6   Codispoti ("Codispoti Decl.") ¶ 2; Declaration of Lisa S. Tang ("Tang Decl.") ¶ 2;

7   Declaration of Jody DeBernardi ("DeBernardi Decl.") ¶ 2; Declaration of Vera De

8   Martini ("De Martini Decl.") ¶ 2.  All of litigating attorneys at I&M and State Fund

9   have sworn, under penalty of perjury, that, other than the information disclosed by

10  Defendants in connection with this motion, they did not receive, access, or even

11  know about Drobot's communications to Sant.

12  **III.    LEGAL STANDARD FOR VICARIOUS DISQUALIFICATION**

13         Disqualification threats "are commonly used for purely strategic purposes to

14  delay the litigation, harass the opposing party or pressure for a more favorable

15  settlement."  *H.F. Ahmanson & Co. v. Salomon Bros., Inc.*, 229 Cal. App. 3d 1445,

16  1454 (1991).  Because of this potential for abuse, disqualification motions are highly

17  disfavored and should be subjected to "particularly strict judicial scrutiny."  *Optyl*

18  *Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985)

19  (citations omitted); *see also Oracle Am., Inc. v. Innovative Tech. Dist., LLC*, No. 11-

20  CV-01043-LHK, 2011 WL 2940313, at *4 (N.D. Cal. July 20, 2011); Declaration of

21  Mark L. Tuft ("Tuft Decl."), ¶ 25.

22         The leading case in the area of vicarious disqualification is *Goldberg v.*

23  *Warner/Chappell Music, Inc.*, 125 Cal. App. 4th 752 (2005)—a case inexcusably

24  omitted from Defendants' motion and relegated to a footnote by their expert.  In

25  *Goldberg*, the California Court of Appeals approved the position (which I&M

26  asserts here) that disqualification hinges on whether any current lawyer from the

27  prior representation is still at the firm—the same standard applied by the ABA

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3062964

- 8 -

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISQUALIFY
IRELL & MANELLA LLP

1   Model Rules of Professional Conduct, which California courts consult if the

2   California Rules do not address an issue.  *Id.* at 765–66.

3       The *Goldberg* case was recently cited with approval by another California

4   appellate court, which explained that "[t]he purpose of a disqualification order is

5   prophylactic, not punitive."  *Kirk v. First Am. Title Ins. Co.*, 183 Cal. App. 4th 776,

6   815 (2010).  In cases where, as here, "the tainted attorney has left the firm, vicarious

7   disqualification is not necessary 'where the evidence establishes that no one other

8   than the departed attorney had any dealings with the client or obtained confidential

9   information.' . . .  Thus, the inquiry is no longer a prospective one, but a

10  retrospective one.  The trial court should not consider the *risk* of transmitting

11  information from the tainted attorney to those involved in the challenged

12  representation, **but, instead, whether the tainted attorney *actually* conveyed**

13  **confidential information**."  *Id.* at 815–16 (italics in original, other emphasis

14  added); *see also* Tuft Decl. ¶¶ 11–19.

15      Notably, the case relied on heavily by Defendants, *Elan Transdermal Ltd. v.*

16  *Cygnus Therapeutic Systems*, 809 F. Supp. 1383 (N.D. Cal. 1992), is not only based

17  upon inapposite facts, but was expressly disapproved of by *Goldberg*, which held

18  that the *Elan* court "*misconstrued California law*" in finding that there was an

19  *irrebuttable* presumption that former attorneys' knowledge of confidential

20  information is imputed to their former colleagues.  *Goldberg*, 125 Cal. App. 4th at

21  765; *see also* Tuft Decl. ¶¶ 20–21.

22      Thus, even assuming Defendants' disqualification motion were timely, which

23  it is not, the Court should still deny the Motion if (1) I&M "can overcome the

24  *rebuttable presumption* that confidential information was transmitted" by "offering

25  sufficient evidence that confidential information was not, in fact, transmitted"; and

26  (2) the Court, "in the exercise of its discretion, concludes that the implicated policy

27  considerations favor allowing [I&M] to remain as counsel[.]"  *Kirk*, 183 Cal. App.

28  4th at 816 (emphasis added).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3062964

- 9 -

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISQUALIFY
IRELL & MANELLA LLP

## IV.   ARGUMENT

The Court should deny the Motion for two separate reasons.  First, vicarious disqualification does not apply because no State Fund or current I&M attorney (excluding firm general counsel, who are not working on the underlying State Fund case) has ever received, accessed, or viewed any of the purportedly confidential information Drobot provided to Sant in 2010, other than that disclosed by Defendants in the context of this motion.  In fact, no current State Fund or I&M attorney knew that Sant had done any work for Drobot until Moving Defendants raised their allegations for the first time in May 2014.  Moreover, the implicated policy considerations—such as State Fund's choice of counsel, the amount of work put in by I&M attorneys to date, and the tactical nature of the Motion—weigh heavily in I&M's favor.

Second, the Moving Defendants have waived their right to seek disqualification of I&M by delaying for nearly a year before raising the purported conflict.  For months, Drobot and other Defendants have tried, without success, to stay discovery in this case.  Now, after Defendants' most recent setback, Drobot "remembered" that Sant had done some work for him back in 2010 that purportedly relates to this action.  Based on this recollection, Defendants seek to stay discovery and disqualify I&M and State Fund's in-house counsel.  Defendants' conclusory and specious justifications for their 11-month delay not only fail to satisfy their burden, they confirm the abusive, tactical nature of their motion.

### A.   Vicarious Disqualification Does Not Apply In These Circumstances.

Drobot spends the bulk of his Motion arguing that Sant's communications with Drobot in the summer of 2010 should disqualify the entire I&M firm—and even State Fund's own in-house counsel—from representing State Fund, even though Sant left I&M in March 2011, over two years before this litigation was filed.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3062964

1   According to Moving Defendants, the fact that Sant left in 2011 is "of no moment."

2   Mot. at 13 (emphasis omitted).  Moving Defendants are incorrect as a matter of law.

3              1.      Sant Did Not "Actually Convey[]" Confidential Information To
                       Any Current State Fund Or I&M Attorneys.
4

5        Despite the Motion's insistence to the contrary, the proper inquiry for the

6   Court is whether Sant "*actually* conveyed confidential information" to any current

7   I&M or State Fund attorneys.  *Kirk*, 183 Cal. App. 4th at 815–16.  He did not.

8        I&M has provided declarations from John Hueston, Alison Plessman, Michael

9   Fehner, Jennifer Bunn, Michael Behrens, Lauren Shaw, Brian Hennigan, Harry

10  Mittleman, Padraic Foran, David Clark, and Steven Feldman, each swearing under

11  penalty of perjury that he or she did not receive *any* confidential information that

12  Drobot communicated to Sant.  *See id.* at 816 n.38.  "[A]bsent credible evidence

13  otherwise, '[t]here is no reason to disbelieve [an attorney's] factual statements in his

14  declaration.'"  *FlatWorld Interactives LLC v. Apple Inc.*, No. 12-cv-01956-WHO,

15  2013 WL 4039799, at *8 (N.D. Cal. Aug. 7, 2013) (quoting *Oracle Am., Inc.*, 2011

16  WL 2940313, at *5 (N.D. Cal. July 20, 2011) ("On the record before it, there is

17  simply no reason for the Court to disbelieve [the attorney's] sworn declaration[.]"));

18  *see also Halladay & Mim Mack Inc. v. Trabuco Capital Partners Inc.*, No. SACV

19  08-1138 AG (MLGx), 2009 WL 3244746, at *3 (C.D. Cal. Oct. 5, 2009)); *Barco*

20  *N.V. v. Tech. Props. Ltd.*, No. 5:08-cv-05398 JF (HRL), 2011 WL 841283, at *2

21  (N.D. Cal. Mar. 8, 2011) (denying motion to disqualify and concluding that "this Court

22  may rely on declarations showing that none of Barco's attorneys has received

23  confidential information stemming from Nycum's previous representation of Moore").

24       Moreover, Drobot recently took Sant's deposition, and Sant confirmed that he

25  did not discuss his work for Drobot with any current I&M attorney.  Sant Depo.

26  142:16–143:14.  In addition, I&M's General Counsel has conducted a review of

27  Sant's electronic time entries from June through September 2010.  Those time

28  entries indicate that Sant spent several hours working on the transaction involving

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3062964                 MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISQUALIFY
                                            IRELL & MANELLA LLP

Drobot and Drobot's father, and that Sant categorized all of that time as "Client Development." There is no indication in those time entries that Sant ever discussed his work for Drobot with any current I&M attorney. Mittleman Decl. ¶ 11.

These eleven sworn statements, the review conducted by I&M's General Counsel, and Sant's deposition testimony are sufficient to rebut the presumption that Sant "*actually* conveyed confidential information" to current I&M or State Fund attorneys. *Kirk*, 125 Cal. App. 4th at 815–16. Additionally, all of the I&M attorneys working on this litigation are litigators, while Sant was a transactional attorney—there would have been no reason for Sant to discuss his brief work for Drobot with any of the I&M attorneys working on this matter. *Compare* Sant Depo. 20:19–21:12; 166:5-17 *with FlatWorld*, 2013 WL 4039799, at *8 (disqualification improper when attorney "never worked on" adverse matters and "is not an intellectual-property attorney, but is focused primarily on environmental matters").

I&M's Director of Practice Support has also explained that it would have been essentially impossible for any of I&M's current attorneys to access Sant's old emails. Declaration of Diane Brookes ("Brookes Decl.") ¶¶ 5–6; *accord FlatWorld*, 2013 WL 4039799, at *8 (denying motion to disqualify in part because "Morgan Lewis's own general counsel testified that, after conducting an extensive forensic investigation of Morgan Lewis's system, there is no evidence that [the attorney sought to be disqualified] ever accessed or received any confidential information about Apple").

Further, as set forth in the Mittleman Declaration, this is not a case where I&M "ignored" a conflict report that disclosed any prior contact with Drobot. Mittleman Decl. ¶ 9. I&M conducted a conflict check before filing the complaint in this action on behalf of State Fund. *Id.*; Hueston Decl. ¶¶ 2–3. The conflict check did not disclose that Drobot or any of the Defendants had ever been clients of I&M because Sant had never obtained intake approval for the limited work he performed for Drobot in 2010, never sent Drobot an engagement letter, and never sent him a

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3062964

- 12 -

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISQUALIFY
IRELL & MANELLA LLP

1    bill.  Under these circumstances—where no one currently at I&M knew about Sant's

2    work with Drobot, and where Sant left I&M years before this case was filed—the

3    Court should conclude that Sant never conveyed confidential information to any

4    current attorneys at State Fund or I&M.  *Id.*; *Kirk*, 183 Cal. App. 4th at 815–16; Tuft

5    Decl. ¶¶ 23–24.

6           2.    <u>State Fund's Allegations Of Fraud Against Defendants Are</u>
               <u>Based On Public Information And An Analysis Of Its Own</u>
7               <u>Billing Records.</u>

8           The Moving Defendants argue at length that I&M and State Fund used

9    Drobot's "Confidential Information" to assist in drafting the complaint.  Mot. at 7–

10   9.  This is a false statement of fact.  No one who participated in drafting the

11   complaint used any information that Drobot communicated to Sant; no one working

12   on the litigation for State Fund had any knowledge that Sant had done any work for

13   Drobot prior to Drobot's first raising the issue on May 12, 2014.  Tellingly, the

14   Moving Defendants do not actually identify any "Confidential Information" that was

15   used by I&M in drafting the FAC.  Nor could they.  Indeed, contrary to the Moving

16   Defendants' false and unsupported assertion about how the FAC was prepared, a

17   plain reading of the FAC makes abundantly clear that its allegations came from

18   information contained in public sources combined with I&M's and State Fund's

19   analysis of State Fund's internal billing records.  For example, in addition to the

20   sections of the FAC cited in the Factual Background section of this Opposition,

21   State Fund allegations include that CPM merged with IPM by filing a Certificate of

22   Merger with the California Secretary of State in which Drobot, Sr. signed as the

23   manager of both the surviving entity and disappearing entity.  FAC ¶ 16.  Also,

24   many of the Entity Defendants listed the exact same addresses on the California

25   Secretary of State website suggesting a common ownership and management

26   structure.  *Id.* ¶¶ 13–19, 35.

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3062964

- 13 -

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISQUALIFY
IRELL & MANELLA LLP

State Fund and I&M used knowledge gained through public sources to conduct "an in-depth review of billings from and payments to the Surgical and Pharmacy Defendants," which included "the review of thousands of bill runs, thousands of individual bills, and thousands of other records including Secretary of State documents, medical regulations and schedules, and industry and trade publications." *Id.* ¶ 155. The allegations arose from numerous public records, reports, and filings—not to mention Drobot's own judicial admissions in this litigation and others. No "Confidential Information" was used to discover, expose, and file suit.

### 3.   This Lawsuit Does Not Attack Sant's Prior Work.

As noted above, I&M is willing to tender the entire record of what it was able to locate regarding Sant's work for Drobot for an *in camera* review. A review of those emails would demonstrate that State Fund's allegations do not purport to "attack" any of Sant's prior work. In particular, Drobot approached Sant—a transactional attorney—for the purpose of reviewing various purchase agreements Drobot intended to execute. Sant Depo. at 94:2-17 (noting that Sant did not negotiate the terms of such sales, but merely documented them). State Fund has never alleged a defect with regard to the technical sufficiency of the purchase agreements themselves, or the mechanics by which the purchase by Drobot was effectuated. The purchase itself is a matter of public record, and there is no evidence in the record to suggest that Drobot ever provided any confidential information to Sant regarding the day-to-day functioning of any entity, let alone that Sant then communicated that information to any current I&M attorney.

Additionally, Sant did not provide any substantive advice to Drobot regarding the State Fund settlement—to the contrary, he told Drobot both orally and in writing that I&M could not advise Drobot regarding the settlement. Sant Depo. at 108:19-109:25; 124:2–125:11; 144:12–145:22; Mittleman Decl., Exs. B–D. I&M cannot "attack" advice it never gave. Moreover, State Fund's complaint does not allege

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3062964

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISQUALIFY
IRELL & MANELLA LLP

that the settlement instrument is unenforceable because of a legal drafting defect. To the contrary, State Fund alleges that it was fraudulently induced to enter the settlement with Defendants through extrinsic omissions and material misrepresentations that Defendants made to State Fund. *E.g.* FAC ¶ 147 ("State Fund was unaware of Defendants' pattern of racketeering activity when it entered into the settlement agreements with the Defendants named therein. Had Defendants disclosed the truth about the Liens and underlying billings, State Fund would have not entered into the settlement agreements."). It is undisputed that Sant never gave Drobot any advice concerning those issues. Mittleman Decl. Ex. C; Tuft Decl. ¶ 22.

### 4. Implicated Policy Considerations Weigh In I&M's Favor.

As set forth above, I&M has provided ample evidence showing "that confidential information was not, in fact, transmitted." *Kirk*, 183 Cal. App. 4th at 816. The next inquiry, therefore, is whether "the implicated policy considerations favor allowing [I&M] to remain as counsel" for State Fund. *Id.*

I&M, State Fund's counsel of choice, has spent thousands of attorney hours vigorously prosecuting this case since its inception, including defending numerous motions and engaging in extensive research and investigations of its own. Disqualifying I&M would greatly prejudice State Fund. As set forth in the following section, particularly given the delay in bringing the motion for disqualification, policy considerations weigh heavily in I&M's favor.

### B. Drobot Waived His Right To Seek Disqualification Of I&M.

In addition to lacking merit as set forth above, the Moving Defendants' Motion was filed nearly ***11 months*** after Drobot was served with State Fund's complaint. Dkt. No. 7. The Moving Defendants' unreasonable delay in seeking disqualification provides a separate and independent reason to deny the Motion. *E.g. Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983) (party that "knowingly refrains from asserting [disqualification] promptly is deemed to have waived that right"); *accord Openwave Sys. Inc. v. Myriad Fr. S.A.S.*, No. C

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3062964

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISQUALIFY
IRELL & MANELLA LLP

1  10–02805 WHA, 2011 WL 1225978, at *6–7 (N.D. Cal. Mar. 31, 2011) (denying

2  motion to disqualify after a four-month delay); *Skyy Spirits, LLC v. Rubyy, LLC*, No.

3  C 09–00646 WHA, 2009 WL 3762418, at *4 (N.D. Cal. Nov. 9, 2009) (denying

4  motion to disqualify after eight-month delay).

5      "To determine whether a motion to disqualify has been *timely* made—that is,

6  whether the movant unreasonably delayed—federal district courts have looked

7  beyond the length of the delay." *Sharma v. VW Credit, Inc.*, No. CV 11-08360 DDP

8  EX, 2013 WL 1163801, at *3 (C.D. Cal. Mar. 20, 2013) (emphasis in original);

9  *Miller v. Alagna*, 138 F. Supp. 2d 1252, 1259 (C.D. Cal. 2000) (considering the

10  number of attorney hours spent on the case during a six month delay in addition to

11  the six month delay itself); *Emp'rs Ins. of Wausau v. Albert D. Seeno Constr. Co.*,

12  692 F. Supp. 1150, 1165 (N.D. Cal. 1988) ("Although the length of the delay in

13  bringing a motion to disqualify is obviously important, it is not dispositive.").

14      As set forth below, numerous factors weigh in favor of denying the Moving

15  Defendants' tactical and unsupported Motion.

16      1.   The Moving Defendants Sought Disqualification Only After
           Their Several Prior Attempts to Stay Discovery Had Failed.
17

18      Disqualification threats "are commonly used for purely strategic purposes to

19  delay the litigation, harass the opposing party or pressure for a more favorable

20  settlement." *H.F. Ahmanson*, 229 Cal. App. 3d at 1454.  Accordingly, it is

21  axiomatic that a party cannot use a motion to disqualify as a tactical device. *Liberty*

22  *Nat'l Enters., L.P. v. Chicago Tit. Ins. Co.*, 194 Cal. App. 4th 839, 847 (2011).  For

23  nearly the entire duration of this lawsuit, Drobot has tried, without success, to stay

24  discovery for various reasons. *See supra*, Section II.C.

25      Drobot's repeated attempts to avoid discovery while a criminal investigation

26  against him remains open does not permit him, or any other Defendant, to seek

27  disqualification at the eleventh hour.  As the Court has held, Drobot is not entitled to

28  a stay of discovery.  The Court should view this Motion as nothing more than "a

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3062964

tactical device to delay litigation" and conclude that the Moving Defendants have waived their right to seek disqualification. *Western Cont'l Op. Co. v. Natural Gas Corp.*, 212 Cal. App. 3d 752, 763 (1989); *Liberty Nat'l*, 194 Cal. App. 4th at 847.

> 2.   The Moving Defendants Have Not Justified Their 11-Month Delay In Seeking Disqualification.

The moving party bears the burden of justifying its delay. *See River West, Inc. v. Nickel*, 188 Cal. App. 3d 1297, 1309 (1987).  The Moving Defendants have attempted to justify their delay on the ground that "Drobot Jr., as a layman, never made the connection that his former lawyer, Mr. Sant, was a partner with the same lawyers who are suing him now," ostensibly because Drobot "was primarily focused on dealing with Mr. Sant, and he was not focused on who the law firm was."  Mot. at 10.

Yet statements and declarations contained in Moving Defendants' own papers belie their assertions.  Among Moving Defendants' many contradictory statements:

- "05/12/2010  Sant provides marketing information about himself ***and the Irell firm***."  Mot. at 4 (underlining omitted, emphasis added).

- "***Drobot Jr. was always under the impression that hiring a partner at Irell meant hiring the firm***, and all of its resources to handle legal issues."  Mot. at 13 (emphasis added).

- "Sant supported that expectation, by sending Drobot Jr. background marketing information about himself, and about the firm Irell, generally." *Id.*

- "***At no time did Drobot Jr. believe that the firm stopped representing him*** as to the two matters Sant worked on, regardless of Sant's departure to be an in-house counsel." *Id.* (emphasis added).

- "Drobot Jr. always had an expectation that for any problems that might arise in regard to the matters that an Irell partner like Sant had handled, could be [*sic*] followed up on by any Irell partner[.]" *Id.*

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3062964

- "Irell is not suddenly a new and different firm than the one Drobot Jr. hired to represent him, just because Sant departed.  Indeed, Drobot Jr. would have a reasonable expectation under the circumstances, *that another partner at Irell would be capable of picking up where Sant left off*[.]"  *Id.* at 16 (emphasis added).

- Drobot declared that he "review[ed] the information Mr. Sant provided me about himself and Irell and Manella, I engaged Mr. Sant *and Irell and Manella* to represent me[.]"  Declaration of Michael Drobot, Jr. ("Drobot Decl.") (Dkt. No. 138) ¶ 3 (emphasis added).

- According to Drobot, he "met with Mr. Sant at the Newport Beach office of Irell and Manella"; called "the number of the Irell and Manella office in Newport Beach (949.760.5201)" communicated with Sant's email address ending in "@irell.com"; noticed that Sant's signature block prominently displayed "Irell & Manella LLP" under his name; and "*placed great trust and confidence in Mr. Sant and his firm to protect my interests as my attorneys*."  *Id.* ¶¶ 3, 5, 6, 8 (emphasis added).

- Moving Defendants' expert, Diane L. Karpman, declared that the "final email (sent to Irell two months after Sant left the firm)" provides "compelling evidence that [Drobot's] expectations were open, and *he continued to believe that Irell Manella* [*sic*] *was his law firm*."  Declaration of Diane Karpman ("Karpman Decl.") (Dkt. No. 136) ¶ 41 (emphasis added).

Despite all of these assertions, Drobot shamelessly concludes his declaration by insisting that he "had forgotten Mr. Sant was an attorney with Irell and Manella" until his attorney discovered the connection after nearly a year of active litigation. Drobot Decl. ¶ 9.

That statement is implausible (to put it charitably), especially considering other curious facts presented in the moving papers.  For instance, one of Drobot's

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3062964

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISQUALIFY
IRELL & MANELLA LLP

1    attorneys has indicated to the Court that "[m]y firm and I first learned of Irell &

2    Manella's prior representation of Michael Drobot, Jr. on or around May 7, 2014 . . .

3    ."  Declaration of Joseph C. Gjonola re: Continuance of Hearing on Protective Order

4    (Dkt. No. 119) ¶ 3.  The motion relates that another attorney, Mr. Sparks, found

5    emails "central to the issues raised in this lawsuit no earlier **than May 5, 2014**"

6    (Motion at 9, emphasis in original).  Yet the Moving Defendants' expert, Diane

7    Karpman, asserts that she was retained by Mr. Gjonola on or about May 3, 2014.

8    Karpman Decl. ¶ 10.  These inconsistencies reveal the tactical nature of this Motion.

9        The Court should reject the Moving Defendants' unsupported assertions that

10   Drobot did not "remember[]" Sant's affiliation with I&M until May 2014.  Without

11   the benefit of Drobot's bald conclusion, the Moving Defendants have no

12   justification whatsoever for their 11-month delay in seeking disqualification.

13           3.    <u>State Fund Would Suffer Significant Prejudice If The Motion Is</u>
                   <u>Granted As I&M Has Expended Significant Time And Resources</u>
14                 <u>Successfully Advocating For State Fund In This Complex Case.</u>

15       "To determine whether a delay is unreasonable, courts may consider '[t]he

16   stage of litigation at which the disqualification motion is made,'" and the prejudice

17   on the nonmoving party.  *Sharma*, 2013 WL 1163801, at *4 (quoting *Liberty Nat'l*

18   *Enters., L.P. v. Chi. Title Ins. Co.*, 194 Cal. App. 4th 839, 846 (2011)); *see also id*.

19   at *6 ("'[M]otions to disqualify should be promptly made before the parties are

20   invested substantially in their litigation line-ups.'") (quoting *Openwave*, 2011 WL

21   1225978, at *7).

22       From the moment State Fund engaged I&M in this matter, I&M has

23   successfully represented State Fund in developing and litigating this case.  In

24   addition to reviewing thousands of documents and propounding and responding to

25   voluminous discovery requests, I&M has successfully litigated numerous

26   substantive disputes in this case.  I&M's intimate knowledge of the facts underlying

27   the allegations and success to this point—neither of which has resulted from the use

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3062964

of any of Drobot's communications with Sant in any way—weighs in favor of finding an unreasonable delay. *See Liberty Nat'l*, 194 Cal. App. 4th at 848 ("McDougal was not only Liberty's longtime lawyer and the man who filed and developed this case, he was *successful* with the case.  That marked him as a lawyer of great value to Liberty (and quite possibly provided the motivation for the motion to disqualify him).") (emphasis in original).  The fact that this is a complex RICO action provides an additional justification for finding an unreasonable delay. *Id.* at 847 ("That this is not a simple case is yet another consideration.").

In *Openwave*, the court concluded that disqualification would prejudice the plaintiff because the plaintiff's firm had "put time and effort into negotiating [a] settlement and developed a strong understanding of the facts at hand." *Openwave*, 2011 WL 1225978, at *6.  Likewise, another California district court held that disqualifying plaintiff's chosen counsel would prejudice the plaintiff because "substantial work has gone in to this case and the discovery deadline . . . is fast approaching." *Skyy*, 2009 WL 3762418, at *4.  Similarly, in *Sharp v. Next Entm't, Inc.*, 163 Cal. App. 4th 410 (2008), the court found prejudice where a team of attorneys and law clerks at the plaintiffs' firm had performed a significant amount of work over a seven month period prior to class certification. *Id.* at 421–23.  The court explained that "[d]isqualification of the [plaintiffs'] firm may impose a significant hardship on plaintiffs, who will bear the burden of finding replacement counsel with the skills and knowledge of [their] firm." *Id.* at 434; *see also Sharma*, 2013 WL 1163801, at *6 ("[D]isqualification may impose a significant hardship on the plaintiffs who would bear the burden of finding a replacement. The sixteen month delay exacerbates that hardship.").

As with the attorneys in *Sharma*, *Openwave*, *Skyy*, and *Sharp*, State Fund would suffer significant prejudice if the Motion is granted and either I&M or State Fund's in-house counsel were disqualified from representing State Fund in this matter.  Indeed, Defendants have asserted that, if I&M is disqualified, "any

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3062964

discovery performed by Irell may be deemed tainted and/or rendered moot." Dkt. No. 142 at 1:16-17. In other words, Defendants apparently seek to start all over again and erase the victories State Fund has rightfully obtained in this case—and Defendants have made it plain through repeated filings that they hope to avoid substantively responding to any pending discovery.

In light of Defendants' failure to justify their 11-month delay in filing this Motion and the significant prejudice that State Fund would suffer if it were granted, the Court should deem Defendants' right to seek disqualification waived. *Piper Aircraft Corp.*, 701 F.2d at 87-88.

**C.     Disqualifying State Fund's Interim CEO, Interim General Counsel And Other In-House Counsel Would Be Unprecedented And Effectively Prevent State Fund From Prosecuting This Case.**

Defendants also argue that "all of State Fund's in-house or other attorneys who have consulted with I&M must also be disqualified from any further involvement with this case." Mot. at 22. Defendants bury in an exhibit the fact that the targeted State Fund personnel include State Fund's Interim Chief Executive Officer, Interim General Counsel, Deputy Chief Counsel and two Assistant Chief Counsels. *See* Decl. of Nicholas P. Roxborough ("Roxborough Decl."), Ex. E., at 2. Specifically, the State Fund personnel that Defendants seek to remove are:

| Name | Position | Location |
|------|----------|----------|
| Carol Newman | Interim Chief Executive Officer[2] | San Francisco |
| Lisa Stolzy | Interim General Counsel | Riverside |
| Vince Codispoti | Deputy Chief Counsel | Santa Ana |
| Vera De Martini | Assistant Chief Counsel | Pleasanton |
| Jody DeBernardi | Assistant Chief Counsel | Santa Ana |
| Lisa Tang | Staff Counsel | Santa Ana |

[2] On June 9, 2014, Carol Newman will assume the role of General Counsel and Lisa Stolzy will become Chief Counsel.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 21 -

| | | |
|---|---|---|
| Linda Platisha | Staff Counsel | Santa Ana |

This is a pure tactical move by Defendants to decapitate their litigation opponent in order to prevent it from further prosecuting a meritorious case to which Defendants have no valid defense.  The targeted State Fund personnel include the individuals at State Fund with ***ultimate decision-making authority and all individuals with any meaningful knowledge of the facts*** underlying this litigation. Platisha Decl. ¶ 7; Newman Decl. ¶ 7; Codispoti Decl. ¶ 7; DeBernardi Decl. ¶ 7; Tang Decl. ¶ 7; De Martini Decl. ¶ 7; Stolzy Decl. ¶ 7.  They are the ones charged with fulfilling the client responsibilities in this attorney-client relationship. Defendants also seek to have these individuals "[p]reclud[ed] . . . from sharing their work product or strategizing with successor counsel."  Notice of Mot. at 2.  Granting Defendants' audacious motion as to State Fund's personnel would effectively impose a death-penalty on State Fund's claims.  Such an order would be unprecedented and at odds with all applicable disqualification law.  Defendants are trying to manufacture what amounts to a *de facto* release of State Fund's claims against them by filing a meritless, tactical motion to disqualify counsel.

Even if Defendants were correct that the fiction of imputed knowledge applies so that whatever Sant knew is deemed to be known by I&M—and that is ***not*** the law—Defendants ask this Court take a further and alarming step of entertaining an impermissible *double-imputation* to State Fund.  According to Defendants, Sant's alleged knowledge first should be imputed to I&M; and second, the fiction of I&M's alleged knowledge should next be imputed to State Fund's Interim CEO, Interim General Counsel, Chief and Assistant Chief Counsels, and other in-house attorneys.

Defendants cite no case which supports double-imputation, let alone double-imputation to a corporation's CEO, general counsel or in-house attorneys. California law is to the contrary.  *See Derivi Constr. & Architecture, Inc.*, 118 Cal. App. 4th 1268, 1276 (2004) ("[Movant] DCA also breaks with precedent by

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3062964

applying double imputation to find vicarious disqualification."). *Derivi* rejected double imputation, noting that "***No case had gone so far; instead, other jurisdictions had erected barriers to stop this spread of the penumbra of disqualification.***" *Id.* (quoting *Frazier v. Superior Court*, 97 Cal. App. 4th 23, 31, 33 (2002) (emphasis added)); *see also* Tuft Decl. ¶ 28 (discussing cases).

Case law addressing the disqualification of co-counsel is not fully analogous to what is being sought here—the disqualification of a client's top legal officers and other in-house counsel. However, the great weight of authority in those cases supports the proposition that if the disqualified lawyer has not conveyed prejudicial information about the aggrieved party to co-counsel, co-counsel is not disqualified. *See e.g., Oracle Am., Inc.*, 2011 WL 2940313 at *5 (refusing to disqualify co-counsel on a theory of double imputation and noting that "the general rule seems to be the contrary: 'disqualification of one firm does not automatically compel disqualification of the firm's co-counsel . . . .  Rather, the particular facts of each case must be considered in order to determine whether disqualification is warranted.'") (quoting *In Re Airport Car Rental Antitrust Litig.*, 470 F. Supp. 495, 501–502 (N.D.Cal.1979)); *FlatWorld*, 2013 WL 4039799, at *9 (refusing to disqualify co-counsel lacking actual knowledge or possession of confidential information and conflicted only through imputation); *Love v. Permanente Med. Grp.*, No. 12-CV-05679-WHO, 2013 WL 5273213 at *6 (N.D. Cal. Sept. 18, 2013) (denying disqualification of co-counsel where "there is no evidence" that co-counsel received any confidential information about the moving party from the tainted attorney); *Canatella v. Krieg, Keller, Sloan, Reilley & Roman LLP*, No. C 11-05535 WHA, 2012 WL 847493 (N.D. Cal. Mar. 13, 2012) (same); *Guifu Li v. A Perfect Day Franchise, Inc.*, No. 11-CV-01189-LHK, 2011 WL 4635176 at *6 (N.D. Cal. Oct. 5, 2011) (same).

The cases cited by Defendants—*Pound v. DeMera DeMera Cameron*, 135 Cal. App. 4th 70 (2005) and *Advanced Messaging Techs., Inc. v. Easylink Services*

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3062964

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISQUALIFY
IRELL & MANELLA LLP

*Intl. Corp. ("Advanced")*, 913 F.Supp.2d 900 (C.D. Cal. 2012)—do not support double-imputation, let alone the automatic disqualification of a party's CEO, general counsel, other legal officers, and in-house counsel.  Rather both *Pound* and *Advanced* concern tainted attorneys who had direct contact with and received confidential information from the party seeking disqualification.  *Pound*, 135 Cal. App. 4th at 74; *Advanced*, 913 F. Supp. 2d at 907-09; *see also FlatWorld*, 2013 WL 4039799 at *5 ("In *Pound v. Cameron,* the court disqualified an attorney because his co-counsel actually had confidential information from their adverse party . . . ."). The *Pound* and *Advanced* courts disqualified co-counsel to protect the moving party from the possibility of inadvertent disclosure.  *Pound*, 135 Cal. App. 4th at 74; *Advanced*, 913 F. Supp.2d at 910.  However, neither *Pound* nor *Advanced* stands for the outrageous proposition "that disqualification of counsel is necessary for associating with a conflicted attorney who had *no* actual confidential information from the adverse party, as is the case here."  *FlatWorld*, 2013 WL 4039799 at *8 (distinguishing *Pound*) (emphasis in original).

Indeed, there is no evidence that supports disqualification of any State Fund in-house attorney: there is no evidence that anyone currently at I&M had any confidential information obtained from Drobot; there is no evidence that Sant or anyone at I&M communicated confidential information to anyone at State Fund at any time; and there is no evidence that State Fund hired I&M because of Sant's prior relationship with Drobot.  The State Fund and I&M declarations (as well as Sant's testimony) are to the contrary on all of these points.  *Cf. In re Airport Car Rental Antitrust Litig.*, 470 F. Supp. at 502 (discussing these factual considerations). As one federal court observed, "the Court is unaware of *any* case in which a court disqualified an attorney or a law firm when no attorney had actual knowledge or possession of confidential information about an adverse party but one was conflicted only through imputation."  *FlatWorld*, 2013 WL 4039799 at *5 (emphasis added).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3062964

*Pound* and *Advanced* are also factually distinguishable from the present action in that those cases did not involve an attempt to disqualify the opposing party's CEO, general counsel, and in-house counsel.  Disqualifying State Fund's officers who are essential to the prosecution of the case would be inconsistent with applicable policy considerations and would deny State Fund "'substantial justice.'" *Kirk*, 183 Cal. App. 4th at 792 (quoting *People ex rel. Dept. of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1144 (1999)).  Their removal would be inequitable, unnecessary and punitive—all things to be avoided when ruling on a disqualification motion.  *See UMG Recordings, Inc. v. MySpace, Inc.*, 526 F. Supp. 2d 1046, 1062-1063 (C.D. Cal. 2007).  Moreover, embracing Drobot's unwarranted theory of double imputation and disqualifying State Fund's in-house counsel is an "extreme result[]" that is "in no way required to maintain public confidence in the bar,'" the paramount concern in analyzing any motion to disqualify.  *Fraizer*, 97 Cal. App. 4th at 36.

V.   **CONCLUSION**

For the reasons stated herein, State Fund and I&M respectfully request that the Court deny the Motion.

Dated:  June 9, 2014                           Respectfully submitted,

IRELL & MANELLA LLP

By:_____*/s/ John C. Hueston*_____
John C. Hueston
Attorneys for Plaintiff
STATE COMPENSATION
INSURANCE FUND

By:_____*/s/ Harry A. Mittleman*_____
Harry A. Mittleman
Co-General Counsel for Irell &
Manella LLP

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3062964

- 25 -

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISQUALIFY
IRELL & MANELLA LLP