1  Nicholas P. Roxborough (SBN 113540)
   npr@rpnalaw.com
2  Drew E. Pomerance (SBN 101239)
   dep@rpnalaw.com
3  Joseph C. Gjonola (SBN 241955)
   jcg@rpnalaw.com
4  **ROXBOROUGH, POMERANCE, NYE & ADREANI, LLP**
   5820 Canoga Avenue, Suite 250
5  Woodland Hills, California 91367
   Telephone: (818) 992-9999
6  Facsimile:  (818) 992-9991

7  *Attorneys for Defendants*
   Michael R. Drobot, Jr., Coastal Express Pharmacy Inc.,
8  Meds Management Group LLC, *and Defendants and*
   *CounterClaimants* Industrial Pharmacy Management LLC,
9  California Pharmacy Management LLC, Long Beach
   Prescription Pharmacy

10

11              UNITED STATES DISTRICT COURT

12      CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

13

14  STATE COMPENSATION              )  Case No. SACV13-00956 AG (CWx)
    INSURANCE FUND,                 )  *[Honorable Andrew J. Guilford]*
15                                  )
            Plaintiff,              )  **MICHAEL R. DROBOT, JR.,**
16                                  )  **INDUSTRIAL PHARMACY**
        v.                          )  **MANAGEMENT LLC,**
17                                  )  **CALIFORNIA PHARMACY**
    MICHAEL D. DROBOT, SR., etc., et )  **MANAGEMENT LLC, AND LONG**
18  al.,                            )  **BEACH PRESCRIPTION**
                                    )  **PHARMACY'S REPLY IN**
19          Defendants.            )  **SUPPORT OF MOTION FOR**
                                    )  **SUMMARY JUDGMENT**
20  _____ )
                                    )  [Reply Declaration of Joseph C.
21  INDUSTRIAL PHARMACY             )  Gjonola; Supplemental Separate
    MANAGEMENT LLC, et al.,         )  Statement; and Evidentiary Objections
22                                  )  with [Proposed] Orders, Filed
            Counter Claimants,      )  Concurrently Herewith]
23                                  )
        v.                          )  Date:    December 15, 2014
24                                  )  Time:    10:00 a.m.
    STATE COMPENSATION              )  Ctrm:    10
25  INSURANCE FUND,                 )
                                    )  [Complaint filed:  June 24, 2013]
26          Counter-Defendants.     )
                                    )
27

28

---

# TABLE OF CONTENTS

1.0   INTRODUCTION AND SUMMARY OF ARGUMENT.........................1

2.0   SCIF MAY NOT RESCIND THE SETTLEMENT AGREEMENTS
      BECAUSE OF ANY ALLEGED UNDERLYING FRAUD IN THE
      BILLS THEMSELVES ...............................................................................3

    2.1   Major Inaccuracies Infect SCIF's Opposition. ...............................3

    2.2   California's General Contract Law Precludes Rescission Of the
           Settlement Agreements Based on Intrinsic Fraud. .........................4

    2.3   SCIF Is Required To Prove Extrinsic Fraud, And No Lesser
           Standard Applicable To Workman's Compensation Awards or
           Compromises Governs This Case.....................................................7

    2.4   SCIF Cannot Demonstrate Extrinsic Fraud Because It Already
           Argued, and The Court Found, All The Alleged Fraud Is Intrinsic.9

    2.5   The *Noerr-Pennington* Doctrine and the Litigation Privilege
           Protect the Moving Defendants From SCIF's Case. .....................13

    2.6   The Settlement Agreements Are Not Illegal..................................17

3.0   SCIF'S ARGUMENTS REGARDING BREACHES OF WARRANTIES
      AND REPRESENTATIONS WITHIN THE SETTLEMENT
      AGREEMENTS ARE WITHOUT MERIT ............................................18

    3.1   The Moving Defendants Do Own The Settled Claims..................18

    3.2   SCIF Wholly Misconstrues The Warranty Against Fraud, Duress,
           or Coercion..................................................................................21

4.0   SCIF HAS NOT MET ITS BURDEN TO RAISE A TRIABLE ISSUE
      OF FACT .................................................................................................22

    4.1   SCIF Did Not Rely On Fraudulent Double Billing Or AWP When
           Determining How Much To Pay In Settlement. .............................22

    4.2   SCIF Has No Evidence Showing That CPM and IPM Were
           Pharmacies Or Engaged In An Illegal Practice of Medicine.........23

     4.3    SCIF Has No Basis For Concluding That CPM/IPM Engaged In Illegal Kickbacks................................................................................24

5.0   CONCLUSION .........................................................................25

# TABLE OF AUTHORITIES

## CASES

*Action Apt. Assn., Inc. v. City of Santa Monica,*
41 Cal. 4th 1232 (2007) ................................................................ 15, 16

*Allied Tube & Conduit Corp. v. Indian Head, Inc.,* 486 U.S 108 (1937) ........ 16

*Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639 (2008) ......................... 22

*Brunski v. Indus. Acc. Comm'n,* 203 Cal. 761  (1928) ...................................... 8

*Cal. Assoc. of Dispensing Opticians v. Pearle Vision Ctr., Inc.*
143 Cal.App.3d 419 (1983) ............................................................... 24

*Caldwell v. Taylor,* 218 Cal. 471 (1933)...................................... 10, 11, 13, 14

*Canaan Taiwanese Christian Church v. All World Mission Ministries,*
211 Cal. App. 4th 1115 (2012)............................................................. 19

*Coupons, Inc. v. Stottlemire,* No. CV 07-03457 HRL,
2009 WL 975438 (N.D. Cal. Apr. 9, 2009)......................................... 6

*Duffens v. Valenti,* 161 Cal. App. 4th 434 (2008)............................................ 17

*Edwards v. Centex Real Estate Corp.,* 53 Cal.App.4th 15 (1997)..................... 6

*Estate of Anderson,* 149 Cal. App. 3d 336 (1983) ........................................... 13

*Filet Menu, Inc. v. C.C.L. & G., Inc.,*
79 Cal. App. 4th 852 (2000)................................................................. 7

*Folsom v. Butte Cnty. Assn. of Governments,*
32 Cal. 3d 668 (1982)........................................................................... 6

*Granzella v. Jargoyhen,* 43 Cal. App. 3d 551 (1974)...................................... 12

*Home Ins. Co. v. Zurich Ins. Co.,* 96 Cal.App.4th 17 (2002) ........................... 7

*Johnson v. Workmen's Comp. App. Bd.*, 2 Cal. 3d 964 (1970) .......................... 7

*Jorgensen v. Jorgensen*, 32 Cal.2d 13 (1948).......................................... 10, 14

*Kuehn v. Kuehn*, 85 Cal.App.4th 824 (2000) ...................................... 5

*Navarro v. IHOP Properties, Inc.*, 134 Cal.App.4th 834 (2005) .................... 5

*People ex rel. Gallegos v. Pacific Lumber Co.*
158 Cal.App.4th 950 (2008) ............................................................ 15

*Professional Real Estate Investors, Inc. v. Columbia Pictures*
*Industries, Inc.*, 508 U.S. 49 (1993) ................................................ 15

*Rambus, Inc. v. Infineon Technologies, AG,*
304 F. Supp. 2d 812 (E.D. Va. 2004) ................................................ 16

*Rios v. Allstate Ins. Co.* (1977) 68 Cal.App.3d 811, 818........................ 5

*Schiff v. City & Cnty. of San Francisco*, 2007 WL 2301773
(N.D. Cal. Aug. 8, 2007) ......................................................... 4, 5, 22

*Scognamill v. Credit Suisse First Boston LLC,*
2005 WL 2045807 (N.D.Cal.2005)............................................... 5, 22

*Shriver v. Kuchel* (1952) 113 Cal.App.2d 421 .................................. 6

*Smith v. Workers' Comp. Appeals Bd.*, 168 Cal. App. 3d 1160 (1985) ............. 7

*United States v. Throckmorton,* 98 U.S. 61 (1878)........................... 13

*Vill. Northridge Homeowners Ass'n v. State Farm Fire*
*& Cas. Co.*, 50 Cal. 4th 913 (2010)................................................. 6

*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1 ..................... 21

*Westphal v. Westphal* 20 Cal.2d 393 (1942) ................................... 13

**STATUTES**

Bus. & Prof. Code § 4170 ............................................................... 24

Civ.Code § 47(b)(2) ...................................................................... 16

Civil Code § 1542 ..................................................................... 6, 18

Labor Code § 139.3(a) and (f) ................................................. 3, 4, 17

Labor Code § 5003 ...................................................................... 7, 8

Labor Code § 5004 ......................................................................... 8

**RULES**

Federal Rule of Civil Procedure 56 .................................................. 25

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1.0   INTRODUCTION AND SUMMARY OF ARGUMENT

Moving Defendants must prevail on this motion because SCIF's entire case, including all allegations of double billing, inflated prices, lack of licenses, kickbacks, etc., all involved conduct which was settled out and released by SCIF in the three Settlement Agreements.  SCIF cannot sue for damages based on bills, liens, and claims that it settled and released, and SCIF cannot rescind the Settlement Agreements by arguing the legal merits of the settled liens/bills, no matter what theory of fraud SCIF concocts.

It is worth noting that SCIF has almost entirely abandoned its central allegations of fraudulent double billing and inflated pricing, because its own settlement negotiators admitted to knowing both of these issues in advance of settlement, and the double billing issue was so well known that it garnered its own contractual provision in each of the settlement agreements.  These are allegations that SCIF cannot maintain in good faith.[1]

So instead, SCIF's primary tactic is the well-worn "throw everything at the wall and see what sticks."  Here SCIF "throws" only allegations, innuendo and naked accusations, citing to its own FAC and proposed SAC, because SCIF has no actual evidence of any wrongful conduct.  Every one of SCIF's citations to its own allegations should be stricken from the Opposition as they do not satisfy SCIF's burden on this motion.

If we take a step back from SCIF's bare accusations and view this case with

---

[1] Nonetheless, in its proposed SAC, SCIF continues to allege that it was damaged by double billing.  In light of both the "duplicate payments" provisions of the Settlement Agreements, and the testimony and documents regarding the issue of double billing that took place prior to entering each settlement, SCIF is at risk of inviting Rule 11 sanctions.  In fact, these are allegations that should never have been made if SCIF had ever conducted a reasonable investigation of the facts prior to filing its complaint.

some perspective, here is what clearly emerges.  SCIF and the Moving Defendants entered into three clear and unambiguous Settlement Agreements, each of which was supported by lawful consideration.  The Moving Defendants had billed SCIF many millions of dollars over many years for medicine that was furnished to thousands of injured workers who were insured by SCIF.  The parties negotiated in good faith to resolve these bills and liens, and SCIF's lawyers drafted the three Settlement Agreements that accomplished that purpose.  In exchange for paying mere cents on the dollar, SCIF extinguished all of its liability and it likewise released any and all claims – known and unknown – it may have had, arising from the bills and liens.  All of this is undisputed.

What is also undisputed is that each and every claim by SCIF against the Moving Defendants alleges conduct that occurred leading up to and in advance of the settlements.  Whether SCIF complains of "double billing," "wholesale price manipulation," "corporate practice of medicine," "kickbacks," or anything else, all of it resulted in the Moving Defendants submitting bills and liens that SCIF now claims to be fraudulent.  And, all of these allegedly fraudulent bills and liens were thereafter settled out, with SCIF releasing any and all claims it might have ever had.

Accordingly, SCIF's entire Opposition is based on its argument that while it had lawfully released all of its claims, if it had only known the full extent of Defendants' fraud, it would not have settled.  But that is a legally untenable position, because the full and unknown extent of SCIF's potential claims is exactly what SCIF willingly and voluntarily gave up, in exchange for paying pennies on the dollar and extinguishing any further exposure of its own.

The only way SCIF could lawfully rescind these settlements would be to show it was defrauded into entering into them.  That did not occur here, and SCIF introduces no evidence to raise a triable issue otherwise.  SCIF was not misled or duped into settling.  Absent a triable issue that it was, SCIF must be held to the clear and plain meaning of the Settlement Agreements.

## 2.0  <u>SCIF MAY NOT RESCIND THE SETTLEMENT AGREEMENTS BECAUSE OF ANY ALLEGED UNDERLYING FRAUD IN THE BILLS THEMSELVES</u>

SCIF argues that although it willingly and voluntarily released all claims – known and unknown – arising out of all bills and liens submitted by the Moving Defendants, it may still rescind the Settlement Agreements because the bills were even more fraudulent than SCIF imagined. That is simply not the law. If it were, no settlement agreement would ever be safe from rescission and no dispute would ever achieve finality.

### 2.1  <u>Major Inaccuracies Infect SCIF's Opposition.</u>

As an initial matter, two major errors made by SCIF in its Opposition must be pointed out. One might be an error of omission. The other can only be an intentional attempt at obfuscation.

First, SCIF has neglected to distinguish LBPP from CPM/IPM. LBPP was and is a licensed, stand alone, retail pharmacy. Therefore, none of SCIF's arguments about the Moving Defendants being unlicensed, illegally practicing medicine, or paying kickbacks through pharmacy management agreements, apply to LBPP. LBPP is therefore entitled to judgment and dismissal from this case no matter how the Court view's SCIF's arguments.

Secondly, SCIF also cannot be trusted to correctly present the law to this Court. In its fervor to invent bad acts, SCIF has accused the Moving Defendants of violating statutes that did not exist during the events at issue. SCIF contends that all pharmaceuticals billed by Moving Defendants were the result of an illegal pharmacy referral by IPM/CPM's provider clients. As such, SCIF argues that it is not required to have paid for any pharmaceuticals dispensed in the manner SCIF imagines, citing to Labor Code § 139.3(a) and (f). (Oppo. 4:16-19.) This is SCIF's most recent and current argument as to why all of the Moving Defendants' bills are fraudulent: that SCIF was not required to pay them, so just sending the bills was fraudulent.

This argument is at the core of nearly SCIF's entire Opposition, but is itself fraudulent.  SCIF has misleadingly quoted the 2012 revision of the statute.  However, up to December 31, 2011 the statue did not include "pharmacy goods," within the list of goods or services to which certain referrals would not be legal.  *See* Gjonola Reply Dec., Exh. B & C, the two versions of Labor Code § 139.3.[2]  The three Settlement Agreements only cover pharmaceuticals dispensed prior to 2012.  Thus, even if SCIF had evidence to support its fanciful referral theory, those referrals were not unlawful during the time covered by the Settlement Agreements.  Thus, no statute allowed or allows SCIF to avoid paying for the pharmaceuticals settled by CPM/IPM.

Moreover, SCIF's illegal referral argument is one that would not apply to LBPP, the party to the third Settlement Agreement.  It is undisputed that LBPP is a stand alone retail pharmacy, which did not have any contracts (or kickback contracts as SCIF has argued) with any doctors or medical providers.  Thus, SCIF's theories of kickbacks, illegal referrals, and lack of a license, have no application to SCIF's third settlement with LBPP.

**2.2   California's General Contract Law Precludes Rescission Of the Settlement Agreements Based on Intrinsic Fraud.**

Moving Defendants agree that general contract law applies.  But general contract law includes the rule that SCIF may not rescind a settlement agreement based on allegations of intrinsic fraud.  SCIF's case law is in accord, despite SCIF's contrary representations.  For example SCIF cited *Schiff v. City & Cnty. of San Francisco*, 2007 WL 2301773, at 10 (N.D. Cal. Aug. 8, 2007), for the proposition that it can rescind the Settlement Agreements based on its allegations of fraud.  *Schiff*

---

[2]  It is troubling that SCIF would intentionally cite the 2012 version of this statute, which was not in existence during the period of time SCIF alleges the wrongful conduct took place.  This cannot be attributed to a mere mistake on SCIF's part.  Rather, SCIF's representation that the statute governed bills, claims, and liens for pharmaceuticals dispensed prior to the 2012 is consistent with SCIF's reckless treatment of the facts throughout the briefing in this case.

4

presents the exact opposite rule and reached the opposite conclusion. Amidst claims that the plaintiff was fraudulently induced to settle his claim, the *Schiff* court considered California's general contract law, including the law of fraudulent misrepresentation, which requires that the plaintiff demonstrate justifiable reliance on the alleged misrepresentation. The court then explained that as a matter of law the plaintiff, like SCIF here, cannot demonstrate justifiable reliance on representations made by an adversary who is represented by counsel in litigation:

> Where a party is <u>represented by counsel and/or</u> where the alleged <u>misrepresentation was made by an adversary during the course of negotiations,</u> courts have often held that <u>reliance is unjustifiable.</u> *See Scognamill v. Credit Suisse First Boston LLC,* 2005 WL 2045807 (N.D.Cal.2005) (holding <u>as a matter of law</u> that <u>reliance on representation of adversary</u> in execution of merger agreement <u>was unjustifiable</u> where parties were represented by counsel during negotiation process).

*Schiff, supra,* at 11. (underline added). Turning to the matter before it, the *Schiff* Court rejected the plaintiff's rescission argument on the grounds, *inter alia,* that plaintiff "was represented by counsel when the agreement was negotiated, and in light of the adversarial relationship between [plaintiff] and Defendants, [plaintiff's] reliance on the representation by Defendants was unjustifiable." *Ibid. Schiff* is fully consistent with Moving Defendants' position that SCIF cannot rescind the Settlement Agreements based on SCIF's allegations of intrinsic fraud. *See, Home Ins. Co. v. Zurich Ins. Co.,* 96 Cal.App.4th 17, 26 (2002); *Edwards v. Centex Real Estate Corp.,* 53 Cal.App.4th 15 (1997); *Navarro v. IHOP Properties, Inc.,* 134 Cal.App.4th 834, 844 (2005); *Rios v. Allstate Ins. Co.,* 68 Cal.App.3d 811, 818 (1977); *Kuehn v. Kuehn,* 85 Cal.App.4th 824, 833 (2000).

SCIF's other citations are also consistent with, and further, the Moving Defendants' argument. For example, *Folsom v. Butte Cnty. Assn. of Governments*, 32 Cal. 3d 668, 677 (1982) (cited by SCIF at Oppo. 22:12-14) contains no discussion of fraud or the distinction between intrinsic and extrinsic fraud, but its general statements confirm that the Settlement Agreements are the equivalent of civil

judgments and that they finally resolve all issues contemplated by the settled litigation.

> "[A] valid compromise agreement has many attributes of a judgment, and in the absence of a showing of fraud or undue influence is decisive of the rights of the parties thereto and operates as a bar to the reopening of the original controversy." (*Shriver v. Kuchel* (1952) 113 Cal.App.2d 421, 425, 248 P.2d 35.)
>
> …[T]hey ordinarily conclude all matters put in issue by the pleadings— that is, questions that otherwise would have been resolved at trial.

*Folsom, supra* at 677.  Whether SCIF was liable to the Moving Defendants for each of its bills, claims, and liens, or whether SCIF might have had defenses to any of them, all would have been "resolved at trial" if any of the bills, claims, or liens had been litigated.  Plus, the parties affirmatively agreed to release one another – including a Civil Code § 1542 waiver – concluding all surrounding matters related to the settled bills, claims, or liens, whether known or unknown.  SCIF cannot reopen and litigate its liability for the bills, claims, and liens it already settled with the Moving Defendants.

SCIF also cites *Vill. Northridge Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 50 Cal. 4th 913 (2010) and *Coupons, Inc. v. Stottlemire*, No. CV 07-03457 HRL, 2009 WL 975438, at *1 (N.D. Cal. Apr. 9, 2009) for the proposition that contract rules apply to settlement contracts.  Both of those cases and their legal observation are inapposite here.  *Northridge* concerned the <u>procedural process</u> for rescinding agreements absent legal action, and *Coupons* found no fraud in the record to support rescission of the contract.  *Filet Menu, Inc. v. C.C.L. & G., Inc.*, 79 Cal. App. 4th 852, 856 (2000), also cited by SCIF (Oppo. 22:13-14) did not concern a settlement agreement.  None of SCIF's cases negate the general contract rule that intrinsic fraud will not justify rescission of a settlement agreement.

### 2.3   SCIF Is Required To Prove Extrinsic Fraud, And No Lesser Standard Applicable To Workman's Compensation Awards or Compromises Governs This Case.

After repeatedly arguing for the application of California general contract rules, SCIF alternatively seeks the application of powers peculiar to the WCAB over matters not at issue here.  Citing *Johnson v. Workmen's Comp. App. Bd.*, 2 Cal. 3d 964, 975 (1970), SCIF argues for an exception in which "intrinsic fraud will suffice to set aside a workmen's compensation <u>compromise or award</u>." (underline added). But the Settlement Agreements here are neither.  The settlements are plainly not awards, but nor are they compromises.  "Awards" and "compromises" are terms of art in workers' compensation, as both refer to special types of agreements providing for the delivery of benefits to injured workers and require special protections and rules to ensure their integrity.  They do not pertain to agreements between insurers and third party providers.

A workman's compensation compromise is not similar to the settlements at issue here, but is rather the equivalent of an award.  "An approved workers' compensation compromise and release rests 'upon a higher plane than a <u>private contractual release</u>; it is a judgment, with "the same force and effect as an award made after a full hearing." ' [citations]" *Smith v. Workers' Comp. Appeals Bd.*, 168 Cal. App. 3d 1160, 1169 (1985) (emphasis added).  *Johnson, supra,* also points out "California Administrative Code, title 8, section 10874, provides that: 'Every compromise and release agreement shall comply with the provisions of Labor Code Sections 5003-5004 and conform to the Appeals Board's forms 15, 16 and 17.'" *Id.* at 973, footnote 7.  Labor Code § 5003, in turn, mandates:

> Every release or compromise agreement shall be in writing and duly executed, and the signature of the employee or other beneficiary shall be attested by two disinterested witnesses or acknowledged before a notary public. The document shall specify:
> (a) The date of the accident.

(b) The average weekly wages of the employee, determined according to Chapter 1 of Part 2 of this division.

(c) The nature of the disability, whether total or partial, permanent or temporary.

(d) The amount paid, or due and unpaid, to the employee up to the date of the release or agreement or death, and the amount of the payment or benefits then or thereafter to be made.

(e) The length of time such payment or benefit is to continue.

(f) In the event a claim of lien under subdivision (f) or (g) of Section 4903 has been filed, the number of days and the amount of temporary disability indemnity which should be allowed to the lien claimant.

The settlements at issue here are not workman's compensation compromises. The Settlement Agreements here were drafted by SCIF's attorneys [Supp. Sep. St. ¶¶ 20 & 23] and are not Appeals Board forms 15, 16 and 17. *See* Deposition of Robert Wilson ("Wilson Depo") (Exh. D to Gjonola Dec.) Exh. 13, 18, and 21 (the Settlement Agreements). Nor do the Settlement Agreements comply with the Labor Code § 5003 or § 5004. *Ibid.* They do not recite any facts or concern the circumstances of a workman's compensation injury, as required by the Labor Code. *Ibid.*

Moreover, the Board's power to set aside an award or compromise exists only during its "continuing jurisdiction" over the claim. *See Brunski v. Indus. Acc. Comm'n*, 203 Cal. 761, 765 (1928) (determining the powers under the Commission's "continuing jurisdiction"). This Court is not the WC Board and has no jurisdiction over any workman's compensation compromise or award, and no continuing jurisdiction. Thus it does not exercise the Board's powers over workman's compensation compromises or awards.

The Settlement Agreements at issue here are private contractual settlements and releases, which are not the equivalent of an award by the Board after a full hearing, and not susceptible to rescission based on the WC Board's jurisdiction over compromises and awards. Here, the liens before the board were dismissed

voluntarily.  Moreover, the Settlement Agreements settled more than the liens before the board.  As SCIF correctly observes, the Settlement Agreements settled any and all existing or potential outstanding bills or claims against SCIF for pharmaceuticals dispensed during certain periods of time.  [Supp. Sep. St. ¶ 9.]  Thus, the Settlement Agreements are a far cry from an individual workers' case, or any case at all, or even any matter presented to the Board for adjudication.  The Settlement Agreements are governed by general contract law, and not by adoption of powers held by the Board over unrelated awards.

### 2.4   SCIF Cannot Demonstrate Extrinsic Fraud Because It Already Argued, and The Court Found, All The Alleged Fraud Is Intrinsic.

SCIF cannot demonstrate extrinsic fraud, because it has already alleged intrinsic fraud, and only intrinsic fraud by definition.  SCIF continues this argument in the Opposition by presenting nothing but arguments as to why it was not liable to the Moving Defendants for any of the claims that it settled with them.

This Court and the Magistrate have already held that all of SCIF's allegations of fraud concern the merits of the bills that SCIF settled with the Moving Defendants, whether because the bills were duplicates, priced too high, arose from an unlicensed entity, were the product of kickbacks or the corporate practice of medicine, or any other argument SCIF has made for why it was not liable for the bills.  (*See* Oppo. 3:6-10, and [Supp. Sep. St. ¶ 1].)  All of this alleged fraud resided in the bills themselves, fraud that all occurred before and leading up to the Settlements, and which was thereafter resolved through the three Settlement Agreements.  As such, this "fraud" cannot then serve as grounds to rescind the Settlement Agreements.

SCIF fundamentally misconceives the distinction between intrinsic and extrinsic fraud.  SCIF has alleged intrinsic fraud in this action because SCIF is challenging its liability for the very bills and liens that it settled with the Moving Defendants; the same liability that would have been litigated if SCIF had not settled.  Relying on probate cases, SCIF attempts to argue that it was prevented from

litigating its case against the Moving Defendants because SCIF was kept ignorant of all its potential defenses to liability.  No cases have held that such "fraud" is extrinsic, and those that SCIF relies on are not only specialized situations, but do not apply to the facts here.

> It is necessary to examine the facts in the light of the policy that a party who failed to assemble all his evidence at the trial should not be privileged to relitigate a case, as well as the policy permitting a party to seek relief from a judgment entered in a proceeding in which he was deprived of a fair opportunity fully to present his case. [¶] The latter policy applies when a party's adversary, <u>in violation of a duty arising from a trust or confidential relation,</u> has concealed from him facts essential to the protection of his rights, even though such facts concerned issues involved in the case in which the judgment was entered .... In this state equitable relief has been granted from final judgments <u>settling the accounts of guardians, administrators, or executors who withheld information that would have enabled the beneficiaries to attack the accounts</u> [citations]. The same principle applies to <u>decrees distributing the estate of a decedent adversely to the rights of beneficiaries who have been precluded from pursuing their rights by concealment of facts by the fiduciary</u> [citations] and to <u>other probate decrees</u> obtained under similar circumstances. [Citations.]" (.)

*Jorgensen v. Jorgensen,* 32 Cal.2d 13, 19-20(1948) (underline added).

The one such case that SCIF relies on is *Caldwell v. Taylor,* 218 Cal. 471 (1933) (*Caldwell* ).  *Caldwell,* in which the underlying action was a probate, is from 1933, and is a case in which the Court itself laments both the underdeveloped state of the law regarding intrinsic/extrinsic fraud, and the novel facts presented to the Court. "The distinction between intrinsic and extrinsic fraud is quite nebulous and a rather extensive search has failed to disclose any case, either one dealing with intrinsic fraud, or one dealing with extrinsic fraud, in which the facts are closely similar to those set out in plaintiff's complaint." *Caldwell, supra,* 218 Cal. at 479.

In *Caldwell,* the decedent devised his entire estate to his wife, whom he had married shortly before dying.  *Id.* at 473.  The decedent's son claimed that the wife prevented him from contesting the will in a timely manner because she had earlier

10

misrepresented her true name and prevented him from discovering that she was married to another man when she married the decedent. *Id.* at 474, 478. This fraud on her part did not occur during a proceeding, or at a time when the wife and son were adversaries in a litigation. The court found that the son was entitled to equitable relief due to the wife's extrinsic fraud, i.e., fraud occurring extrinsic to the probate, which prevented the son's timely challenge. To remedy the fraud, the widow was declared an involuntary trustee of the decedent's estate for the son's benefit. *Id.* at 478-481.

To analogize to *Caldwell,* SCIF argues that in this case, SCIF was prevented from fully presenting its case against the bills and liens at the WCAB, because it was kept ignorant of facts that might have supported additional defenses against SCIF's liability for those bills. But this argument forecloses any possibility of extrinsic fraud being practiced on SCIF, because the bills themselves would constitute the only fraud, while at the same time the bills were the subject and object of the dispute between the parties.

To avoid this necessary result, SCIF is now arguing that the Moving Defendants hid the true nature of their business relationships with medical providers, and that proof of that relationship (which SCIF has not presented thus far) would invalidate the bills absolving SCIF of liability. Again, such claims resound to the merits of the settled bills and liens.

To evidence the forgoing fraud (albeit, insufficiently), SCIF points to the Moving Defendants' decision to redact portions of its provider agreements before presenting them to SCIF at Robert Wilson's request during the settlement negotiations. SCIF also relies on vague "representations" that Robert Wilson received during the negotiations (but which do not appear in the Settlement Agreements).

But the *Caldwell* reasoning simply does not apply, because SCIF was not prevented from appearing at the WCAB and defending against Moving Defendants

11

liens, nor prevented from challenging their bills on any grounds, or from investigating their validity.[3]  SCIF could have discovered all of the facts that it presently alleges in its complaints and asserts in this Opposition, either during negotiations or litigation of the liens.  If it did not like the redactions, it could have investigated further, or refused to settle.  *Caldwell* teaches that "[a] showing of fraud practiced in the trial of the original action will not suffice. The authorities hold this to be intrinsic fraud, and uniformly hold that since there must be an end to litigation, and the fraud was part of the case presented in the former action, equity will not reopen the litigation." *Caldwell, supra,* 218 Cal. at 476.

The Moving Defendants' alleged fraud was practiced by sending the actual bills at issue.  [Supp. Sep. St. ¶¶ 1 & 4.]  According to *Caldwell,* "It also seems to be the rule that the fraud alleged must not be the fraud which is in effect the issue in controversy, the fraud upon which the cause of action in the former suit was based. In other words, the rule awarding equitable relief cannot be held to include such frauds as could have been relieved by the probate court itself by refusing probate, where the injured party had actual notice of the probate proceedings in time to make his contest and was not prevented from so doing by some fraud of the other party." *Caldwell, supra,* 218 Cal. at 477.  By parity of reasoning with *Caldwell,* the Moving Defendants' fraud was intrinsic because it could have been thwarted during a lien hearing or if SCIF had contested the bills at the WCAB.

Moreover, *Caldwell* and the other cases cited by SCIF are probate cases, which, according to *Jorgensen, supra,* 32 Cal.2d at 19-20, are rare instances concerning special relationships between the parties, requiring a higher degree of honesty.  *See, e.g., Granzella v. Jargoyhen*, 43 Cal. App. 3d 551, 556 (1974) ("...in

---

[3] In fact, the undisputed evidence presented by the Moving Defendants is that SCIF thoroughly investigated the bills, had everything they needed to do so, were not prevented from doing so by Defendants, and analyzed the bills for three years before entering into the first settlement.  [Supp. Sep. St. ¶¶ 24 & 38.]

reliance on the blood and trust relationship between the parties and on the representation of defendant, plaintiffs did not contest the probate…") *and see, Estate of Anderson*, 149 Cal. App. 3d 336, 347 (1983).

Absent such relationship, "[a] party who has been given proper notice of an action, however, and who has not been prevented from full participation therein, has had an opportunity to present his case to the court and to protect himself from any fraud attempted by his adversary. [Citations.] Fraud perpetrated under such circumstances is intrinsic, ...." *Westphal v. Westphal* 20 Cal.2d 393, 397(1942), citing in part to *United States v. Throckmorton* 98 U.S. 61 (1878). SCIF has not pointed to any fraud which prevented it from participating in the lien proceedings, SCIF did not share any special relationship with the Moving Defendants, and the asserted fraud did not occur outside of or apart from sending allegedly fraudulent bills and filing liens to collect them. Therefore, the alleged fraud is intrinsic and cannot form the basis for rescission of the Settlement Agreements.

SCIF could not more assuredly establish the <u>intrinsic</u> nature of the alleged fraud than it does when it argued, "Defendants instituted the WCAB proceeding by filing liens asserting their right to payment. These assertions were false and fraudulent and, absent those assertions, it cannot be doubted that State Fund would never have entered into the settlement agreements." (Oppo. 24:18-21.) Thus, SCIF has literally argued that instituting each lien action was the act of fraud upon which SCIF complains in this case. That is intrinsic fraud. It also places this case squarely within the *Noerr-Pennington* doctrine, and the litigation privilege.

### 2.5 The *Noerr-Pennington* Doctrine and the Litigation Privilege Protect the Moving Defendants From SCIF's Case.

In this case, the fraud that SCIF has alleged is the Moving Defendants' fraudulent billing. That was already found by both this Court and the Magistrate, at SCIF's urging – in an effort to avoid application of *Noerr-Pennington* and the

litigation privilege which bars SCIF's claims as to any activity that took place during the lien proceedings or Settlement Negotiations. [Supp. Sep. St. ¶ 5.]

It should be obvious from the above quoted portions of SCIF's Opposition at page 24, lines 18-21, that SCIF is duplicitous on this point.  In opposition to the *Noerr-Pennington* and litigation privilege arguments SCIF continues to claim that the Moving Defendants' fraud was embodied in their bills alone. (Oppo. 18:8-10.)  But in SCIF's effort to prove extrinsic fraud, SCIF's arguments flail around pointing to the lien filings themselves as the fraudulent acts. (Oppo. 24:18-21.)  Therefore, SCIF has conclusively invited these two defenses which bar all of SCIF's claims against the Moving Defendants.

Moreover, SCIF's argument that "law of the case" prevents this Court from applying *Noerr-Pennington* and the litigation privilege is based on the Court not upholding the *Noerr-Pennington* defense in a 12(b)(6) motion to dismiss.  There is nothing to indicate that a denial of a motion to dismiss becomes law of the case for FRCP 56 purposes.  This Court made no such proclamation of law when it denied Defendants' motion to dismiss.  Moreover, in originally confronting the *Noerr-Pennington* doctrine and litigation privilege defense in this Opposition, SCIF flip flops again, arguing that it is the bills themselves which are fraudulent, and that such fraud occurred prior to any lien proceedings at the WCAB. (Oppo. 18:8-10.)  But SCIF also claims the alleged fraud did take place during the lien proceedings. (Oppo. 24:18-21.)  Thus, on the one hand, it is the bills which are fraudulent, but in the next breath, it is the commencement of WCAB lien proceedings which are fraudulent.  This raises the very serious concern over whether and to what extent SCIF is presently attempting to commit a fraud on the Court and on the Moving Defendants by arguing both sides of a factual issue.

Nor is SCIF's case against the Moving Defendants saved by the "sham litigation" exception to *Noerr-Pennington*.  Petitioning is not transformed into a sham just because SCIF may have defenses to assert.  Even if SCIF could defeat all

14

of the bills and liens on the merits, that does not satisfy the test for the Sham

exception.  The Sham exception prevents application of the *Noerr-Pennington*

defense only if the liens are <u>both</u> meritless <u>and</u> brought for the ulterior purpose of

directly and independently injuring SCIF by virtue of embroiling SCIF in the lien

process.  As the US Supreme Court held:

> We regard as sham "private action that is not genuinely aimed at procuring favorable government action," as opposed to "a valid effort to influence government action." *Allied Tube & Conduit Corp. v. Indian Head, Inc.,* 486 U.S., at 500, n. 4, 108 S.Ct., at 1937, n. 4. And we have explicitly observed that a successful "effort to influence governmental action ... certainly cannot be characterized as a sham." *Id.,* at 502, 108 S.Ct., at 1938.

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508

U.S. 49, 58-59, (1993).

"In other words, efforts to influence government action are a sham only when

the person or persons making such efforts '[invokes] the process of [governmental]

decision making for the injury that *the process alone* will work on competitors....'

[citations]"  *People ex rel. Gallegos v. Pacific Lumber Co.* 158 Cal.App.4th 950,

965-66 (2008) (emphasis in original).

SCIF does not even suggest that the Moving Defendants had the necessary

ulterior motive to injure SCIF by virtue of subjecting SCIF to WCAB proceedings.

On the contrary, SCIF's entire case is dedicated to proving that the Moving

Defendants' sole purpose was to collect insurance reimbursements on their bills and

that they filed liens in furtherance of their efforts to collect.  Therefore, the Sham

exception does not apply and does not prevent application of the *Noerr-Pennington*

doctrine.

SCIF's remaining arguments against application of the litigation privilege are

equally unavailing.  SCIF's reliance on *Action Apt. Assn., Inc. v. City of Santa*

*Monica,* 41 Cal. 4th 1232, 1248-49 (2007) is perplexing.  That case held, "We

contemplate no communication that is more clearly protected by the litigation

1   privilege than the filing of a legal action." *Id.* at 1249. As just mentioned above,

2   SCIF has now taken to identifying the filing of liens as an act of fraud. It is so

3   important that it is worth repeating: "Defendants instituted the WCAB proceeding by

4   filing liens asserting their right to payment. These assertions were false and

5   fraudulent and, absent those assertions, it cannot be doubted that State Fund would

6   never have entered into the settlement agreements." (Oppo. 24:18-21.) Thus, SCIF

7   has literally argued that instituting the lien proceeding was the communicative act of

8   fraud that caused SCIF to enter the settlements.

9          By extension, any communications made in furtherance of the lien proceedings

10   or settlements are also protected communications. But SCIF argues that when the

11   Moving Defendants redacted portions of their provider agreements they engaged in

12   the destruction of evidence, and such communication would not be protected.

13   "Section 47(b) 'does not make privileged any communication made in furtherance of

14   an act of intentional destruction or alteration of physical evidence *undertaken for the*

15   *purpose of depriving a party to the litigation of the use of that evidence.*" Cal.

16   Civ.Code § 47(b)(2) (emphasis added)." *Rambus, Inc. v. Infineon Technologies, AG*,

17   304 F. Supp. 2d 812, 825 (E.D. Va. 2004). But redacting a paper is not "destruction"

18   or "alteration" under the statue or case law that applies it. *Id.* Nor would it deprive

19   SCIF of use of the evidence at trial, because the documents still exist in unredacted

20   form, should SCIF choose to abandon settlement discussions and pursue litigation

21   instead. *C.f., Id.*

22          Even if the redacted agreements did fall under the "destruction" exception, any

23   and all other communications between the parties, including all discussions with, and

24   representations made to Hensley or Wilson, are still protected, along with the lien

25   filings themselves. Thus, according to SCIF's favorite case, *Action Apt. Assn., supra,*

26   from the California Supreme Court, SCIF's law suit against the Moving Defendants

27   is barred by the litigation privilege.

28

### 2.6 __The Settlement Agreements Are Not Illegal.__

SCIF raises a brand new theory, not alleged in any of its complaints, that the Settlement Agreements are illegal and invalid as a matter of law. If true, this argument would be an embarrassing admission for SCIF, because SCIF studied Moving Defendants' bills for three years before SCIF's attorneys approached Moving Defendants asking to settle, and SCIF unilaterally drafted the supposedly illegal agreements. Then again, SCIF has already filed a complaint that embarrassingly claims to have been defrauded as to facts that its own lawyers and settlement negotiators admit to having known prior to settlement.

The case SCIF cites concerning contract illegality, *Duffens v. Valenti*, 161 Cal. App. 4th 434, 454 (2008), regarded a dating service contract that violated the provisions of a statute requiring certain terms and outlawing other terms. "In the case before us, not only does the basic agreement fail to contain the mandatory provisions of section 1694.3, it instead contains language about nonrefundability of payments made that is directly contrary to the required language." *Ibid.*

But here, there is nothing illegal about a settlement contract between private parties such as the Moving Defendants and SCIF, agreeing on monetary consideration in exchange for dismissal of liens and abandonment of all other bills and potential claims. Even if the claims being settled could have been successfully defended at litigation, for whatever reason, that is the risk the litigants take when entering such a settlement. No illegal contract has been pleaded or proved because none of the terms are illegal or prohibited by statute. Whether SCIF would have been liable to pay the claims was never adjudicated and will never be adjudicated because the matter was fully and finally resolved through the Settlement Agreements. However, the Court can rest assured that if the liens had been litigated, Labor Code § 139.3(a) & (f) would not have invalidated the liens, because that statute did not include "pharmacy goods" among illegal referral agreements up through the end of 2011 – the time period covered by the Settlement Agreements. Thus, no statutes

17

1 | could have been violated, even under SCIF's flawed understanding of what
2 | constitutes an "illegal contract."

**3.0   SCIF'S ARGUMENTS REGARDING BREACHES OF WARRANTIES AND REPRESENTATIONS WITHIN THE SETTLEMENT AGREEMENTS ARE WITHOUT MERIT**

Although not alleged anywhere in any version of its complaint, SCIF now argues that the Moving Defendants committed misrepresentations contained within the Settlement Agreements themselves. SCIF claims these misrepresentations are material, and justify rescission of the three settlements. SCIF is wrong as a matter of law.

### 3.1   The Moving Defendants Do Own The Settled Claims.

Unable to avoid its settlement and release (with a Civil Code § 1542 waiver) of all the liens, bills, claims, and defenses concerning the same, SCIF has invented yet another new theory for rescission of those agreements. SCIF now argues that the initial recital in each settlement agreement stating that "Lien Claimants entirely own any and all right to compensation for any goods and services provided…" means that a legal right to compensation is a legal certainty. SCIF now argues that this recital was a warranty of that legal right and of SCIF's liability, such that the existence of any potential defense to liens and bills is the Moving Defendants' breach of that warranty. That is a preposterous interpretation of these terms which do not match the underlying facts and have no legal support.

> "The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties. 'Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ.Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (*Id.,* § 1639.) The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" (*id.,* § 1644), controls judicial interpretation. (*Id.,* §

1638.)' [Citations.]" ( *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18, 44 Cal.Rptr.2d 370, 900 P.2d 619.) "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ.Code, § 1641.) "The factual context in which an agreement was reached is also relevant to establish its meaning unless the words themselves are susceptible to only one interpretation. [Citations.]"

*Canaan Taiwanese Christian Church v. All World Mission Ministries*, 211 Cal. App. 4th 1115, 1123-24 (2012). SCIF offers no legal support for its unbelievable interpretation. The nature and terms of the Settlement Agreements foreclose this interpretation, and the parole evidence confirms that no such warranty was made or broken.

The plain and obvious meaning of that recital, as evidenced by the entire agreement, is that Defendants warrant that they are the proper and appropriate party to collect on the liens, and SCIF will not be subject to a claim from some third party that someone else should be paid on the lien, rather than the Moving Defendants. Wilson testified to SCIF's intention in this regard when he stated: "I wanted proof that CPM had standing to collect these liens." *See* Wilson Depo Excerpts, Gjonola Reply Dec., Exh. A. SCIF's concern was to settle the pharmaceutical claims with the correct party, and avoid the risk that the doctors who actually prescribed and dispensed the pharmaceuticals would later appear and demand reimbursement for the same claims. *Id.* For that reason, SCIF required CPM/IPM to prove to SCIF's satisfaction that they owned, or had assignment of, the at-issue claims prior to entering the settlement. *Id.* In response, CPM/IPM provided SCIF with three ring binders full of it agreements with CPM/IPM's clients - the doctors who prescribed and dispensed the pharmaceuticals – demonstrating that CPM/IPM had standing to pursue the at-issue claims. *Id.*[4]

---

[4] The fact that Moving Defendants redacted the financial terms contained in the contracts with its client doctors was not an issue because SCIF was not interested in

This is the only reasonable interpretation, and SCIF's argument that Recital "A" was a warranty of the legal sufficiency of every lien and bill, and of SCIF's liability for every lien and bill, is incredible. First, the Recitals also state, "Without admitting any liability, the Parties desire to settle their differences, compromise their disputes, and release each other from any and all liability." *See,* Wilson Depo (Exh. D to Gjonola Dec.) Exh. 13 (Settlement Agreement 1). Thus, the Moving Defendants could not have been warranting SCIF's liability when SCIF is not admitting any liability, and wishes to settle without so admitting. Second , the parties were settling "any and all actual and potential lien claims, bills, charges, and/or claims of interest and penalties by Lien Claimant against Defendant for all dates of service up to the (sic) 3/1/07 as well as All Topical Dates of Service." *Id.* The Moving Defendants could not possibly warrant the legal sufficiency of "**potential** lien claims, bills, charges" etc. (*Id.*) because, by their nature, potential claims are not identified and might not even be identifiable. The Settlement Agreements resolved any and all of SCIF's actual or potential liability that might arise from specified dates of service, and not just from enumerated liens, bills, or dispensed pharmaceuticals. *Id.* Third, if the Moving Defendants were actually warranting the legal sufficiency of their claims and SCIF's liability for them, then Moving Defendants would have no reason to accept less than every dollar that was billed and potentially billable. Yet they accepted pennies on the dollar.

Finally, SCIF has not introduced a shred of evidence that the Moving Defendants did not own the claims that were settled. SCIF's only argument is that SCIF did not have the legal obligation to pay the claims because Defendants allegedly violated Labor Code § 139.3 because of their referral relationships with medical providers. But as discussed above, the conduct of which SCIF complains was perfectly legal up through the end of 2011, and thus as a matter of law, the

those terms, and had no stake in the terms between Moving Defendants and the providers. *See* Wilson Depo Excerpts, Gjonola Reply Dec., Exh. A.

1  Moving Defendants did not violate Labor Code § 139.3.  Accordingly, SCIF has

2  failed to raise a triable issue that the moving Defendants did not own the claims that

3  were settled.

4      **3.2**    **SCIF Wholly Misconstrues The Warranty Against Fraud, Duress,**

5          **or Coercion.**

6      SCIF's argument that the warranty that a party is "not aware of any duress,

7  menace, fraud, coercion, or undue influence which has caused any party to enter this

8  agreement" (*See, e.g.* Wilson Depo (Exh. D to Gjonola Dec.) Exh. 13 (Settlement

9  Agreement 1, section III.) was breached by Defendants because they knew they had

10  committed fraud, is a patently absurd interpretation of that language.

11      SCIF's interpretation of this provision is unreasonable because it assumes the

12  impossible:  that the Moving Defendants could know what information "caused"

13  SCIF to enter into the settlements and whether SCIF's beliefs about the claims were

14  accurate before or after receiving information from the Moving Defendants, or

15  whether SCIF's reliance was ever justified.  Even Robert Wilson and Susan Hensley,

16  SCIF's negotiators, have not testified as to what SCIF relied on, having been

17  instructed that such information violates the attorney client privilege.  *See* Wilson

18  Depo Excerpts, Gjonola Reply Dec., Exh. A.  Thus, the Moving Defendants could

19  not possibly have had information sufficient to make the warranty SCIF is proposing.

20      The only reasonable interpretation of the Settlement Agreements' provision

21  regarding fraud, duress, or coercion as not causing a party to enter into the settlement

22  is that each party merely warranted that it was not itself induced by any known fraud,

23  duress, or coercion.  It is telling the other party that it is entering into the Settlements

24  freely, willingly, and voluntarily, and that they will not later claim it was somehow

25  duped or fooled into settling.  This is the only reasonable and sound interpretation of

26  these provisions based on the full text of the contract, its intent to settle claims, and

27  based on the evidence.  SCIF's interpretation, which would permit SCIF to avoid and

28  rescind any agreement at the first suspicion that it had a defense to any "actual or

potential" claim, is clearly unreasonable.  It would effect an illusory settlement, because it would give SCIF the option, in perpetuity, to rescind any settlement it ever entered into, simply by claiming that the other party breached the warranty when it represented it was not aware of its own fraud which caused SCIF to enter into the agreement.

## 4.0    SCIF HAS NOT MET ITS BURDEN TO RAISE A TRIABLE ISSUE OF FACT

### 4.1    SCIF Did Not Rely On Fraudlent Double Billing Or AWP When Determining How Much To Pay In Settlement.

Under California law, "It must appear, however, not only that the plaintiff acted in reliance on the misrepresentation but that he was justified in his reliance..." *Schiff v. City & Cnty. of San Francisco*, 2007 WL 2301773, at *11 (N.D. Cal. Aug. 8, 2007) (cited by SCIF).  For its RICO cause of action, SCIF also must demonstrate justifiable reliance.  *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008) ("Of course, none of this is to say that a RICO plaintiff who alleges injury 'by reason of' a pattern of mail fraud can prevail without showing that *someone* relied on the defendant's misrepresentations.")  At the same time, where a party is represented by counsel and/or where the alleged misrepresentation was made by an adversary during the course of negotiations, courts have held that reliance is unjustifiable.  *See Scognamill, supra,* 2005 WL 2045807.

SCIF filed a complaint stating that it was defrauded because the Moving Defendants rebilled and double billed for pharmaceuticals, and because AWP prices were not tied to the pharmaceuticals' actual costs.  But SCIF knew all about the double billing and AWP issue.

Double billing was such an issue that SCIF drafted a provision in the Settlement Agreements for handling past and future-discovered double payments. [Supp. Sep. St. ¶ 34.] It was precisely because no one knew how many double payments might have been made that the parties contracted for SCIF's reimbursement

22

of any future-discovered double payments.   Because the double payment issue was known to SCIF, it did not justifiably rely on any double billings to its detriment, and contracted to avoid any possible injury or damage from double billing.  Thus, double billing cannot form the basis of a fraud claim.

As for AWP, SCIF's attorney Robert Wilson emailed the Moving Defendants a legal memo from SCIF detailing how AWP works, how it is not tied to actual costs, and how SCIF should deal with the problem of inflated AWP benchmarks.  *See,* Hensley Depo. Exh. 42, Gjonola Reply Dec. Exh. D.  The entire thrust of the memo was that <u>SCIF does not rely on AWP when determining how much to pay for pharmaceuticals</u>.

Moreover SCIF has not provided any admissible evidence demonstrating that the Moving Defendants exercised any influence over any reported AWP.  SCIF has also not produced any case law or statutes setting out any rules governing the reporting of AWP.  But according to SCIF's own legal memorandum, there are no rules for reporting, and that is why SCIF did not rely on AWP when determining what to pay to settle the Moving Defendants' bills.  *Id.*

### 4.2   SCIF Has No Evidence Showing That CPM and IPM Were Pharmacies Or Engaged In An Illegal Practice of Medicine.

Business and Professions Code & 4170 (which is part of the Pharmacy Practice Act) specifically authorizes a physician to dispense drugs or dangerous devices to patients in his/her office even though the office is not a pharmacy and the physician is not a licensed pharmacist.  CPM and IPM administered doctors' in-office pharmacy programs.  SCIF's Opposition argues that CPM/IPM were pharmacies themselves, and thus SCIF was not obligated to pay their bills.

SCIF presented no law establishing that CPM/IPM's acts qualified them as pharmacies.  SCIF just cites to testimony concerning CPM/IPM's operations, and asserts that their acts embody a pharmacy.  SCIF provides no support for that legal conclusion.  Moreover, CPM/IPM do not dispense pharmaceuticals, and there is no

23

admissible evidence that they ever have.  Indeed, Wilson's insistence that CPM/IPM prove that they had standing to collect from SCIF is evidence that the doctors – and not the Moving Defendants – were the ones doing the actual dispensing pursuant to Bus. & Prof. Code § 4170.

SCIF's reliance on the letters between the Pharmacy Board and CPM discussing CPM's lack of a license is inadmissible hearsay for the proposition that CPM required a license.  The letters do not communicate an administrative finding or represent an adjudication of fact.

SCIF cites no statute or case law establishing that anything CPM/IPM did qualified as the practice of medicine.  *Cal. Assoc. of Dispensing Opticians v. Pearle Vision Ctr., Inc.* 143 Cal.App.3d 419, 427-429 (1983), is confined to an analysis of statues governing optometry.  It is legally and factually inapposite.  SCIF also argues that CPM/IPM were controlling formularies.  There is no admissible evidence demonstrating any such control, there are only objectionable communications regarding the contents of formularies, without any admission or indication of control.  And SCIF cites no statute or case law establishing that even a complete control of formularies by CPM/IPM would be illegal.

And, as already discussed, even if CPM/IPM were pharmacies, there was no prohibition on their activity under Labor Code § 139.3(a) & (f) during the time period in question.  This guts the vast majority of SCIF's argument.  It means that SCIF's claims of illegality and fraud, and SCIF's assertion that it was not obligated to pay CPM/IPM, is wrong as a matter of law.

**4.3    SCIF Has No Basis For Concluding That CPM/IPM Engaged In Illegal Kickbacks.**

Once again, SCIF has not provided any law establishing what activity would qualify as a kickback, or what particular arrangement would be illegal.  It offers no evidence of any kickback arrangement between CPM/IPM and medical providers.  Moreover, SCIF offered no law or logical reasoning how SCIF could be injured by

24

so-called kickbacks between providers and the Moving Defendants.  There is no law that would excuse SCIF from liability to reimburse for pharmaceuticals dispensed to injured workers based on the financial arrangement CPM/IPM had with its provider clients.

**5.0   CONCLUSION**

For the foregoing reasons, under Federal Rule of Civil Procedure 56, the Moving Defendants are entitled to summary judgment on SCIF's entire FAC.  There are no triable material issues of fact.  All three Settlement Agreements contain broadly worded and valid releases that preclude SCIF from pursuing any claims against the Moving Defendants as a matter of law.  SCIF has no legal basis to rescind those agreements.  Moreover, the undisputed evidence establishes that there were no misrepresentations made, nor did SCIF reasonably rely on anything the Moving Defendants said or did.  In as much as SCIF's sole allegation against the Moving Defendants is billing fraud, the undisputed facts and relevant law require that judgment be entered against SCIF and in favor of the Moving Defendants.

Dated: December 1, 2014                ROXBOROUGH POMERANCE NYE & ADREANI

By: /s/ Joseph C. Gjonola
Nicholas P. Roxborough
Drew E. Pomerance
Joseph C. Gjonola
Attorneys *for Defendants* Michael R. Drobot, Jr., Coastal Express Pharmacy Inc., Meds Management Group LLC and *Defendants and CounterClaimants* Industrial Pharmacy Management LLC, California Pharmacy Management LLC, and Long Beach Prescription Pharmacy